UTICA,
July, 1835.

Andrew
v.
Dieterich

---

ANDREW vs. DIETERICH.

Where a party went to a carpet store and agreed for the purchase of a quantity of carpeting for which he was to pay cash, and the carpeting, according to the course of the trade, was sent to the house of the purchaser in the roll, so that as much as should be required might be cut off, and the residue returned and payment made for what was taken; and the carpets were made up and laid down in the house of the purchaser, where they remained *three weeks* before the remnant of the roll of carpeting was returned; and in the mean time the purchaser pawned them to an auctioneer, whom he employed to sell his furniture, and who in *good faith* made an advance to him upon the carpets; and then the purchaser absconded, and it was conclusively shewn that he had obtained the goods by *false pretences;* IT WAS HELD, that the property of the original owner was not divested, that the auctioneer acquired no title by the transfer from the purchaser, and that the owner was entitled to reclaim his goods.

In *England,* if property be taken *feloniously,* no title passes from the felon to a *bona fide* purchaser, unless the property be sold in *market overt;* we have no *markets overt,* consequently no title passes here to a purchaser who buys property which has been *feloniously* taken.

By the *revised statutes,* the obtaining of goods by *false pretences* is a *felony;* the law therefore is changed from what it was when the case of *Mowry* v. *Walsh,* 8 *Cowen,* 238, was decided, wherein it was held that where the owner of goods parted with them to a *fraudulent vendee,* intending thereby to divest himself absolutely of his interest or property in the goods, the fraudulent purchaser was not guilty of *felony;* but now the obtaining of goods by false pretences being declared a felony, the owner is not divested of his property in the goods, but may reclaim them even after a transfer to a *bona fide* purchaser.

A fraudulent purchaser acquires no title as against the vendor; but where a vendor delivers possession of his goods, with intent not only that the *pos-*

*session* but the *property* shall pass, a *bona fide* purchaser, from a fraudu-
lent vendee, holds the goods in preference to the original owner.

In questions of *fraudulent purchase* of goods, where there is a *manual tradi-
tion* to the vendee, the point submitted to the jury should be, whether the
vendor in parting with the possession intended also to transfer his interest
in the article sold.

If there is any thing to be done by the parties preparatory to ascertaining
the price of goods sold, when the sale is for cash, a delivery of the arti-
cle does not divest the title of the vendor until the price be ascertained
and paid.

ERROR from the superior court of the city of New-York.
Andrew brought an action of *replevin* against Dieterich for
a quantity of carpeting. The defendant pleaded *non cepit*
and *non detinet*, and gave notice of special matter. On the
trial of the cause, it was proved that one *John Simmons*
purchased of the plaintiff carpeting to furnish a house in the
city of New-York, for which carpeting he was to pay *cash.*
The carpeting, according to the custom of trade, was sent,
on the 12th December, 1833, to the house occupied by
Simmons, in the *roll*, so that as much as should be required
might be cut off, the residue to be returned, and the pur-
chaser to pay for as much as was used. On or about the
7th *January* following, the remnant having been returned
to the plaintiff, and the quantity taken by Simmons ascer-
tained, a bill of the carpeting and of other articles subse-
quently purchased by Simmons was made out and present-
ed for payment, and a message returned, that as soon as
Simmons could measure the carpet and see that all was
right, the bill would be paid. Instead of calling and paying
the plaintiff, Simmons absconded. Previous however to
absconding, he had applied to the defendant in this cause,
an auctioneer of household furniture, to sell his furniture,
and obtained an advance upon it of $350, and gave the key
of his house to the auctioneer. The carpeting in question
was removed by the defendant to his auction room. The
plaintiff demanded it, and the defendant refused to deliver
it unless his *lien* was discharged. The carpeting had been
made up and laid down in the house occupied by Sim-
mons for *three weeks* previous to its removal to the auction
room, and the defendant saw the carpets on the floor of the
house occupied by Simmons before making the advance of

UTICA,
July, 1835.

Andrew
v,
Dieterich.

$350. It was clearly proved that Simmons obtained the carpeting by *false pretences*. Mr. Justice *Oakley*, who presided at the trial, charged the jury that the defendant was entitled to their verdict, if they found that there had been a complete delivery of the property by the plaintiff to Simmons; and that when the defendant made the advance on it and took possession of it by way of pledge, he was ignorant of any circumstance which ought to have put him on his guard as to the manner in which Simmons had obtained it from the plaintiff; and that if they should find such a delivery by the plaintiff to Simmons, the plaintiff could not recover on the ground that the property had been *feloniously obtained*. The jury found for the defendant. The plaintiff having excepted to the charge of the judge, sued out a writ of error.

*J. Anthon*, for plaintiff in error. There was not such a delivery of the property as passed the title to Simmons, and of course he could not transfer title to the defendant. From the nature of the article, and the use to which it was to be applied, it was necessary to entrust Simmons with its temporary possession. The mere *manual tradition* did not pass the title. The sale was incomplete until the measurement of the article, and payment made therefor. 3 *Johns. R.* 399. 13 *id.* 434. 3 *Cowen*, 84. 6 *id.* 250. 6 *Johns. Ch. R.* 437. 3 *Atk.* 44. Simmons was guilty at *common law* of a *constructive larceny*, 7 *Taunt.* 59, *Ry. & Moo. R. C.* 181, 188, 250, *Russ. on Crimes*, 1068, 2 *East's C. L.* 692, and by the *revised statutes*, he was guilty of a *felony*. 2 *R. S.* 767, § 53. *id.* 702, § 30. He therefore did not obtain, and could not transfer *title* to the property.

*N. Dane Ellingwood*, for defendant in error. Although the carpeting was sold for cash, it was competent to the plaintiff to waive its payment as a condition precedent; and from the fact that no demand of payment was made until three weeks after the carpeting was made up and laid on the floors of the house of the purchaser, the jury were warranted in saying that here was a perfect delivery. The question of delivery was submitted to them, and they found for the defendant.

The delivery being complete, it was competent to Simmons to transfer the title to the defendant, a *bona fide* pawnee for valuable consideration. 3 *Caines*, 182. The charge of the judge was correct.

*By the Court,* SAVAGE, Ch. J. This subject has been several times before this court, and the cases all sustain the proposition that a fraudulent purchaser acquires no title as against the seller; but as possession is *prima facie* evidence of property, where the vendor has delivered possession of his goods, with intent not only that the *possession* but the *property* shall pass, a *bona fide* purchaser, from a fraudulent vendee, shall hold the goods in preference to the original owner. The reason is, that the original owner, by putting his goods in the hands of the fraudulent vendee, has reposed confidence in him, and has thereby enabled him to commit a fraud, and therefore the equity of the original owner is not equal to that of the person who has *bona fide* parted with his money or property in the purchase of such goods. The original vendor by his imprudence enabled the fraudulent vendee to defraud some one, and should himself be the sufferer rather than a third person who must otherwise be defrauded. *Mowry* v. *Walsh,* 8 *Cowen,* 238. *Root* v. *French,* 13 *Wendell,* 570. In the first of those cases, it was stated that if goods were taken *feloniously,* no title was acquired by the felon, and he could convey none to a *bona fide* purchaser. Such is the law in England, unless the stolen property be sold in market overt; and as we have no market overt, all our sales have the same effect as sales in England, other than those in market overt; and such sales do not divest the title of the owner from whom property has been stolen. Even after a sale in market overt, if the owner prosecute the felon to conviction, he is entitled to his property again or its value, even from the purchaser in market overt, or his vendor for valuable consideration without notice. *Horwood* v. *Smith,* 2 *Durnf. & East,* 750, 755, 6. This restitution is made in pursuance of a statute. 21 *Hen.* 8, *ch.* 11. Our revised statutes allow the restoration of property alleged to have been stolen, upon satisfactory proof to the magistrate who shall take the examination

of the person accused of stealing such property, without any conviction. 2 *R. S.* 746, § 31. I cannot therefore admit the correctness of the last proposition laid down by the learned judge who presided at the trial, " that the plaintiff could not recover on the ground that the property had been feloniously obtained." In the case of *Mowry* v. *Walsh*, the question principally discussed by the counsel and the court was, whether the person who fraudulently purchased the goods of the plaintiff Mowry, and sold them to the defendant Walsh, had been guilty of *larceny* in obtaining possession of them. If he had been guilty of larceny, it was conceded by the counsel, and assumed by the court, that the defendant's *bona fide* purchase for valuable consideration paid, would not protect him. In such a case, the maxim *caveat emptor* applies. We then understood the law to be, and so declared it, that a fraudulent purchaser of goods was not guilty of *larceny* if the owner delivered possession, thereby intending to part with the property in the goods. In this respect, I apprehend, the charge of the judge in the court below was not as explicit as it should have been. He put it to the jury to say whether there had been a complete delivery of the property to Simmons. The question should have been, whether the plaintiff delivered possession, thereby intending to transfer his interest in the carpet. If there was any thing to be done by the parties preparatory to ascertaining the price, where the sale was to be for cash, then a delivery for such purpose did not divest the title of the plaintiff. *Ward* v. *Shaw*, 7 *Wendell*, 404. There oxen were delivered to a butcher to be slaughtered, and paid for in cash at a certain price per hundred ; it was held that the property did not pass until the weight was ascertained. Here the number of yards was to be ascertained, and this was to be done in both cases by the vendee—in both it was an act in which the vendor was interested, and was to precede any act of the vendor in demanding or waiving payment. It was there said, and authorities referred to in support of the position, that when any thing remains to be done before the article is to be delivered, the property does not pass. Here, according to the evidence, the roll of carpeting was delivered to Simmons ; not because it was all sold to him, but

for a special purpose, to wit, that the necessary quantity might be cut off to make the carpet in question. That quantity was to be ascertained before the bill could be made out, and the bill must be made and presented before payment could be demanded, and payment, by the contract, was to be made upon delivery. The judge therefore should have instructed the jury that the facts proved did not constitute a delivery in law.

It has already been observed, that in *Mowry* v. *Walsh*, the law was understood to be, that where the owner of goods parted with them to a fraudulent vendee, intending thereby to divest himself absolutely of his interest or property in such goods, the fraudulent purchaser was not guilty of felony. This was under the common law definition of the term "felony." The revised statutes have defined the term as follows: " The term 'felony,' when used in this act or in any other statute, shall be construed to mean an offence, for which the offender, on conviction, shall be liable by law to be punished by death, or by imprisonment in a state prison." 2 *R. S.* 702. § 30. Every person who obtains the personal property of another by any false pretence, is liable to be punished " by imprisonment in a state prison," 2 *R. S.* 767, § 53 ; he is therefore guilty of felony ; property thus obtained is now obtained feloniously. It seems to follow that the owner of any property thus obtained is not divested of his ownership therein by means of such fraud, but may reclaim the same even after a transfer to a *bona fide* purchaser. This must follow, or there must now be an exception to the general rule that the owner is not divested of his property by a felonious taking and subsequent sale to a *bona fide* purchaser. I think the courts are bound to say, that when the legislature altered the law as to what constitutes a *felonious taking*, they intended that such alteration should have its full effect, and the principle should be extended and carried out in all its ramifications.

This construction is calculated to give additional security to the owners of personal property, and is not liable to the objection of unreasonably restraining its alienation. Formerly, if a *felon* secretly possessed himself of property not his own, and subsequently sold it to an innocent purchaser, the owner might

follow his property and recover it ; but if the same person, instead of secretly stealing the property, had obtained possession by means of false pretences, whereby the owner was induced to part with his property, he was without remedy as against a subsequent *bona fide* purchaser for value. The reason was, that in one case he never consented to part with his property, and in the other he did ; but in the latter case that consent was obtained by fraud. In both cases the property of the owner was gone without an equivalent, and in both cases the subsequent purchaser had paid value without notice of fraud or felony. I apprehend there never was any very good reason for the distinction. In very few cases does the *bona fide* purchaser know any thing of the circumstances under which the fraudulent possessor obtained possession. In the present case the circumstances would have been the same as to the pawn or pledge of the carpet, whether Simmons had obtained it either by an actual or constructive felony. The defendant made no inquiries, and received no information on that point, before making the advance.

On the whole case, therefore, my conclusions are, 1. That there was no delivery of the property by the plaintiff which could divest his title to the carpet in question, and 2. That if there had been such delivery obtained by false pretences, which would subject Simmons to imprisonment in a state prison, then the property was feloniously obtained ; and in such case the owner is entitled to recover his property from a *bona fide* purchaser for valuable consideration.

The plaintiff was therefore entitled to recover, and the judgment of the court below must be reversed.

Venire *de novo* to be issued by the superior court ; costs to abide event.