## Adolphus C. Schaeffer *v.* Peter Macqueen.

A *bona fide* purchaser, for valuable consideration, actually paid, acquiring personal property, from one having possession and apparent ownership, with the consent of the true owner, acquires a good title, although the possession was obtained from the rightful owner by fraud and false pretenses.

Special Term.—This action was brought to recover the value of a quantity of bulk shoulders, which were alleged to have been wrongfully taken by the defendant from the plaintiff. The defendant being the owner of the shoulders, was induced to part with the possession of them to one Bailey, under the following circumstances:

Bailey was a produce broker in Cincinnati, the defendant a packer of pork. Bailey represented to the defendant that he wished to buy shoulders "upon an order." The defendant agreed to sell. It was a cash sale; but the understanding appears to have been that Bailey was to raise the money, in part, by a bill to be drawn against the property upon the consignee, who had given the order to buy. In such case it appeared a larger amount might be drawn for than where there had been no order; but the shipment was made for sale on account. To enable Bailey to draw and negotiate the bill, it appears to have been necessary that he should obtain a bill of lading for the property; at least he was, by the act of the defendant, enabled to obtain a bill of lading. The defendant makes out and signs a bill of the purchase of the shoulders, receipting for the price. Upon this Bailey obtains such a possession that he was enabled to ship the shoulders in his own name, and obtain a bill of lading. With this bill of lading, by which the shoulders are consigned to the plaintiff, he went to the agent of the plaintiff, and, delivering the bill of lading and an invoice of the property as a pledge, or security, obtains money, on a draft, to the amount of $2,376. The plaintiff had given no order to Bailey to buy the goods, but the draft was negotiated, and possession oft he property taken by the agent of the plaintiff as security, in the usual course of business, it being supposed that the shoulders were the property of Bailey, bought on speculation, and being shipped for sale. It turned out that not only was the representation that the shoulders were bought on an order untrue, but that even the amount realized on the draft, instead of being applied in payment of the check given for the shoulders, was appropriated, by Bailey, to other uses, and no part of the money was received by the defendant.

A comparison of the date of the check with that of the invoice and bill of lading, shows that the check was not dated on the day it was received. The check filled up by Bailey was as follows:

"*Cincinnati, 2d Mo.* 21, 1856.

"Gilmore & Brotherton : Pay to Peter Macqueen, or order, three thousand and forty-two dollars and seventy-five cents. $3,042.75            Signed,            M. BAILEY."

The bill of purchase, dated February 19, 1856, after stating article and price, concluded :

"*Cincinnati, February* 19, 1856.

"Received payment by check.
            Signed,            PETER MACQUEEN."

The bill of lading is also dated February 19, 1856, and the invoice delivered by Bailey to the agent of plaintiff, bears the same date.

The defendant, having taken the shoulders from the possession of the plaintiff, this action was brought, and the case upon the evidence submitted to the court.

*Taft, Key & Perry,* for plaintiff.

*Tilden, Rairden & Curwen,* for defendant.

GHOLSON, J. The general rule, that where the possession of goods is obtained by a fraudulent purchase, though they may be reclaimed from the vendee, they can not be recovered from a third person, who has obtained them in good faith, has not been disputed by the counsel for the defendant. It is claimed, however, that there is a distinction where the fraud is of such a character as would justify and sustain a prosecution under the statute for obtaining goods by false pretenses; that such a case must stand on the same ground as larceny, and it being clear that, in case of larceny, the true owner is not deprived of his goods, though they have come into the hands of a purchaser in good faith, a like rule should govern where goods have been obtained by false pretenses.

It is a general rule that "no one can transfer to another

a better title than he has himself." No man can be divested of his property without his own consent, or the operation of law, in which latter case, indeed, it has been said his consent is implied. Consequently, it is the general rule that even the honest purchaser, under a defective title, can not hold against the true proprietor. But to this general rule there are well-recognized exceptions, some founded in public policy, or proceeding from the nature and quality of the particular species of property, and others on the conduct of the owner of the property, as making it unfair or unjust that he should reclaim the property in the hands of an innocent party; and in these last cases, as in the case of being deprived of property by operation of law, he may be said to have consented, or at least, placed himself in such a position that he can not dispute his assent.

To the first class of these exceptions belong coin, bank bills, and negotiable securities. To these, though they have been lost or stolen, a good title may be asserted by a fair owner, who has obtained them in the ordinary course of trade and business. To the second class belong cases "where an owner, with the intention of sale, has in any way parted with the actual property of his goods with his own consent, though under such circumstances of fraud or error as would make that consent revokable, and authorize a rescission of the sale as against such vendee;" and also cases where an owner "has, by his own voluntary act or consent, given to another such evidence of the right of selling his goods as, according to the custom of trade or the common understanding of the world, usually accompanies the authority of disposal;" or, as it has been expressed, "has given the external *indicia* of the right of disposing of his property;" 20 Wend. 267, 280, *Saltus* v. *Everett*. In both these cases a purchaser in good faith can retain the property, because the owner has, by his own direct voluntary act, conferred upon the person from whom such a purchaser derives title, the apparent right of property, as owner, or of disposal as an agent; Id. 279.

The distinction between such cases and the case where goods are found or stolen, is obvious. It has been said that "the distinction between fraud and felony is this: in one case, the man who parts with the property makes a contract *in fact*; in the other, he does nothing;" 70 E. C. L., 10 C. B. 919, 923, *White* v. *Garden*. In the same case, it is said: "There is a very obvious distinction between the cases of goods obtained by felony and fraud or false pretenses. A contract for the sale of goods, though obtained by fraud, is perfectly good, if the party defrauded thinks fit to ratify it;" and following the language of the same authority, it appears to me that the defendant here intentionally parted with his property in the shoulders, when he caused them to be delivered to Bailey, and it is not competent for him, after the plaintiff has, by his act, been induced to part with his money, to turn round and say the contract, as between him and Bailey, was null and void, and that Bailey had no property, and, therefore, could pass none to the plaintiff; Id. 927.

Such is, I think, the rule that must govern this case, unless something can be found in the statutes of the State requiring a different one to be adopted. I am satisfied that there is no statute that was intended to have, or can have, such an effect. The case cited from the New York Reports, 14 Wend. 31, *Andrew* v. *Dieterich*, which is supposed to place the obtaining goods by false pretenses on the same ground as when they have been stolen, proceeds on the idea that it is made a *felony*. The reasoning in that case shows that it can have no application as authority in this State. The mere fact that obtaining goods by a false pretense is made punishable, is not sufficient to change the rule. Indeed, the legislation of our State, even if it may not be held to embrace this case, strongly shows that the rights of parties standing in a position strikingly analogous to that of the present plaintiff, were intended to be secured and protected.

Taking all the facts of the case together, it might be fairly argued that the defendant assented to the obtaining,

by Bailey, of the bill of lading, with a view that a draft should be negotiated and money raised to pay for the article which was the subject of the contract. The defendant expected payment only in this mode, and to carry it into effect, substantially intrusted Bailey with the possession of the property. If this view be correct, then the case might fall under the provisions of the "act to prevent fraudulent practices," passed March 12, 1844; Swan, 278. This act expressly secures the right of the plaintiff, as against the true owner, to the extent of the money he advanced.

It might also be fairly claimed, under the general provisions of that statute, that, as the defendant had empowered Bailey to ship the goods as his own, the consignee must be protected in his lien. It would be a fraud upon him were it otherwise, and against such a fraud it was the intention of the statute to protect.

But, in any view, no intention can be drawn from the legislation of the State to change or affect the general rule, and under its operation the right of the plaintiff must be protected. There will, therefore, be a finding in his favor.

Judgment for plaintiff.