## ARGUED AND DETERMINED

### IN THE

# SUPREME COURT OF ARKANSAS,

### AT THE

## DECEMBER TERM, A. D. 1869.

JONES, *et al.*, *v.* PEARCE.

CONTRACT OF SALE. Where a contract is entered into to discharge a written obligation by the payment of cotton, the circumstance, that long. after the time of the alleged constructive delivery of the cotton, the obligation was allowed by the pretended vendor to *remain* in the hands of the pretended vendee, is a very *pregnant fact.*

WHAT IS NECESSARY TO PASS TITLE. No sale is *complete,* so as to vest in the vendee an immediate right of property, so long as any thing remains to be done between the buyer and seller in relation to the goods.

WHEN THE GOODS MUST BE WEIGHED. A contract to sell and deliver cotton is not performed where the weight and value have not been ascertained.

In such a case the cotton must be weighed with the concurrence or acquiescence of the vendee.

*Appeal from Phillips Circuit Court.*

Hon. JOHN E. BENNETT, Circuit Judge.

35

GARLAND & NASH, for appellants.

If Pearce had taken the cotton in hand and moved it, the delivery would not have been more complete. *Story's Sales,* 311; 12 *Mass.,* 300; 2 *Kent,* 501; 1 *East,* 192; 7 *ib.,* 558; 2 *Eng.,* (7 *Ark.,*) 197; 14 *Ark.,* 351; *Beller v. Block,* 19 *Ark.,* 566; *Pratt v. Parkman,* 24 *Pick.,* 42.

If the appellants did not perform the contract at exactly the time agreed upon, Pearce waived this by accepting the cotton, and by his other acts done after that time, looking to the accepting of it; as, for example, in August, 1863, Pearce was engaged in getting permits to sell this cotton. All this, on his part, was a clear waiver of any question as to time. 1 *Parsons' Con.,* 475; 2 *ib.,* 147, 187; 3 *Parsons' Con.,* 382, 386; 2 *Story's Eq. Jur.,* 776, 780.

W. G. WHIPPLE, for appellee.

The proof shows that there never was any legal selecting and separating of the cotton covered by the pretended sale; that the cotton was never weighed in the proper manner, in the presence or with the consent of Pearce.

No principle of the law is better established than that a sale of goods is not complete, and no title to the property passes to the vendee, so long as any thing remains to be done by the vendor; such as *weighing,* measuring, or counting.

It has been held that an attempted sale of "25,000 bricks from the west end of a kiln," was not completed, because the bricks were not actually counted. *Gilman v. Hill,* 36 *N. H.,* 311; *Beller v. Block,* 19 *Ark.,* 573; *Story on Sales, sec.* 296; *Courtright v. Leonard,* 11 *Iowa,* 32; *Nicholson v. Taylor,* 31 *Penn. State R.,* 128; *Seris v. Bellocy,* 17 *La. An.,* 146; *Ockington v. Richey,* 41 *N. H.,* 275; *Chapin v. Potter,* 1 *Hilton,* (*N. Y. C. P.,*) 366; *Cook v. Logan,* 7 *Clarke,* (*Ia.,*) 142.

HARRISON, J.

Philip R. Jones and the heirs and administrators of Thomas Lockart, deceased, filed their bill, in the Phillips circuit court, against Thomas Pearce, for a specific performance of an agreement to convey a tract of land; to which the defendant filed an answer, which he made a cross-bill, and in it prayed a foreclosure of the complainants' equity of redemption in the land, and a sale of the same for the payment of purchase money.

The complainants answered the cross-bill, and replications were filed to the answers to the bill and cross-bill.

Upon the hearing, the complainants' bill was dismissed and a decree rendered upon the cross-bill in favor of the defendant, in accordance with its prayer. The complainants appealed.

The material allegations of the bill were: That the said Philip R. Jones and Thomas Lockart, on the 11th day of December, 1861, purchased of the defendant a tract of land in Phillips county, on which was a steam saw and grist mill, for eight thousand dollars, for which they executed two writings obligatory, for four thousand dollars each, one payable twelve months after date, the other payable in cotton, at ten cents per pound, to be ready for delivery by the 20th day of January, following; and the defendant gave them a bond to make them, upon the payment of the writings obligatory, a deed of conveyance for the land; that afterwards, on the same day, he gave them an obligation, under seal, to take cotton from them, also, in payment of the writing obligatory falling due twelve months after date, at ten cents per pound, to be of the class *middling*, and ready for delivery on the first day of February, 1862, if they should, by the first day of January, agree so to pay it, which proposition they accepted and agreed to by the day named; that, before the day stipulated, they had the cotton ready and delivered it to the defendant, to pay both obligations, and that he accepted and received it, at the places where it lay, as a full payment and satisfaction of the same, promising at the time to take it away and give them up their

obligations. He neglected, however, to do either, and, several months after, the cotton was burned by the military authorities. of the Confederate States; that Thomas Lockart died, in November, 1863, intestate, leaving as his heirs at law the parties suing as such, and that Addis E. Lockart had been appointed his administrator; that the defendant never had made a deed of conveyance for the land, as required by his bond, and then absolutely refused to convey the same.

The answer admitted the allegations of the bill, except as to the first mentioned. obligation, which it averred bore ten per cent. interest after maturity, and the quality of the cotton; the other was to be paid in cotton, which was to be, as he averred, of the average of the crop raised by Jones and Lockart, in 1861; and the acceptance by them of the proposition to pay the first obligation in cotton, the delivery of the cotton, and the payment and satisfaction of the obligation, were positively denied. And it set forth as cross-matter the sale of the land, the execution of the obligations for the purchase money, and of the bond for title, the death of Lockart, &c., as above stated in the pleadings, and that the obligations given for the purchase money were wholly unpaid. The complainants' answer was consistent with the allegations in their bill.

There is in this case but a single question: Were the obligations given for the purchase money paid in cotton? And for its decision we must ascertain the facts and the rules of law applicable to them.

We will state the substance of the evidence:

Hamilton Jones deposed that he was, in the latter part of 1861, indebted to Phillip R. Jones, and offered to pay him in cotton. He consented to take twenty thousand pounds, to be delivered by the end of the year. A few days after, he agreed to take twenty thousand more. The cotton was ready by the first of December, and deponent requested Jones to come and get it. Jones said it was for the defendant, and he would get him to come with him for it. Deponent had the cotton—eighty-one bales, averaging 497 pounds—rolled out and marked with

defendant's name, and he afterwards saw defendant and told him the cotton was ready. He replied that it was all right, and requested deponent to take charge of it, and keep it for him, promising to pay him for his trouble. Deponent told him that he was to haul it to the river, and if it was not hauled then, he would not consider himself bound to haul it; and the defendant replied that he did not want it at the river, nor exposed, and requested him to put it up, and said he would be out in a few days and attend to it himself. The cotton was burned by the Confederates, he thought, in May, 1862. Defendant, in a conversation with deponent, after the commencement of the suit, said he thought he was liable for forty or fifty bales of the cotton.

Joseph S. Thompson deposed that, in June, 1862, he went over to Thomas Lockart's, where he was shown seventy-one bales of cotton, which, Lockart told him, belonged to the defendant, and had been turned over to him towards the payment of two notes, that he and Philip R. Jones had given him for a tract of land, the weights of which cotton he took, and were contained on a paper he produced as a part of his deposition, and amounted to thirty-six thousand five hundred and forty-seven pounds. He produced, also, another paper, containing the weights of fourteen bales that were on the place on which he resided, that Lockart bought, about the last of December, 1861, of R. S. Boyd, for the defendant, amounting to six thousand eight hundred and forty-two pounds. Both lots were burned in June, 1862.

Lycurgus Cage deposed that, in the fall of 1864, he made an assignment of some notes to W. D. Rice, to secure a debt, among which was one on Philip R. Jones and Thomas Lockart for $4,000. Defendant wished deponent, who had it in possession, to attach some cotton that Jones had in Memphis. He called on Jones, and Jones said he had paid it in cotton, and produced a statement from Hamilton Jones of the weights. He then informed the defendant what Jones had said. He said that Jones had paid one of the notes for the land, and

possibly something on that one, but not more than six or seven hundred dollars.

Henry Lackey deposed that he heard a conversation, in the spring of 1862, he thought, between Philip R. Jones and defendant, in which Jones requested defendant to go and get the cotton at Hamilton Jones', and told him it had been ready for him for some time. Defendant told him not to trouble himself. It was his cotton, and, if lost, it was his loss.

William B. Worsham deposed that he had heard all the parties speak of their trade; and, in a conversation he had with the defendant, he said he had agreed to receive payment for the land in cotton, and that Jones and Lockart had collected sufficient for the purpose, and had notified him of the fact, and that it was his, and held at his risk; and it was his recollection that it was stored at Hamilton Jones', Thompson's and Lockart's. It was burned about the last of May or first of June, 1862, and, after it was burned, he spoke to defendant about it, and he admitted that he had received it, and that it was his.

On the part of the defendant, Hamilton Jones, who also deposed for complainants, deposed that he proposed to Phillip R. Jones to pay a debt he owed him in cotton. He agreed to take twenty thousand pounds. About two weeks after, he agreed to take twenty thousand pounds more, and it was to be delivered by Christmas. In December he informed him it was ready. He procrastinated the delivery until some time in January, when deponent told him the cotton must be delivered. He then informed the deponent that the cotton was for the defendant, and that had caused the delay, and told him if he could get some men to prove the delivery, he would receive it. The deponent accordingly got W. D. Freeman and H. F. Jones, and Philip R. Jones came, and they weighed the cotton. Deponent had 130 bales, and he had agreed to let Jones have an average of his crop, and he and Jones alternately selected a bale until each had selected forty—Jones selecting the best and the deponent the most inferior cotton. Thirty of those selected by

Jones were marked P. R. J.; the other fifty, including all the inferior cotton, were marked P. The eighty bales selected did not quite make the forty thousand pounds, and an additional bale was selected, by one or the other of them, which was also marked P.

Lycurgus Cage, who also deposed for the complainants, deposed that he had for collection a note on Philip R. Jones, for four thousand dollars, that the defendant had let Rice have. He applied to Jones, in Memphis, for payment. He denied owing it, and said he had paid it in cotton. Deponent then went to see the defendant and told him what Jones had said. He said Jones had not paid it, and wanted the deponent to attach some cotton he had in Memphis. He had several interviews with both parties. Jones always insisted that he had paid a previous note, and all of that, except six or seven hundred dollars, in cotton; and he showed a statement of cotton that Hamilton Jones had weighed and had held for defendant by defendant's order. The defendant denied that he had received the cotton, or was liable for it; and said that, if he was compelled to take it, it would only pay the cotton note, and a very small part, if any of that, while Jones insisted that it was sufficient to discharge both notes, except six or seven hundred dollars, which he offered to pay, if the defendant would give him up both notes.

H. F. Jones deposed that, about the first of the year 1862, he was called upon to weigh the cotton, at his father's gin-house. His understanding at the time was, that it was weighed for the defendant; but the defendant was not present, nor had any agent present. That which was weighed for the defendant was marked with the letter P. The deponent marked all that was marked to him, but did not remember the number of bales.

Joseph S. Thompson, who also deposed for the complainants, deposed that, in May or June, 1862, he was sent for by Lockart to go to his gin. He went, and when he got there he was told they were about to weigh some cotton for the defendant and which they proceeded to do. Fourteen bales, at R. S

Boyd's, which Lockart bought of him to turn over, as he said, to the defendant, were also weighed out to Lockart. One-half of this cotton formerly belonged to the deponent, and he had transferred his interest to Boyd, but it had been under his care until it was burned, and was never, to his knowledge, received by the defendant. The defendant was not present when the cotton was weighed, nor had any agent present to receive it. The cotton in that section of the country was all burned about the same time, and within the space of two or three days. He heard they were going to burn the cotton two or three days before they commenced.

The depositions of Philip R. Jones and Ezekiel Jones, two of the complainants, were also read, on their part, and that of the defendant on his. Depositions of other persons were also read, on the part of the defendant, for the purpose of impeaching the credibility of William B. Worsham; but, inasmuch as they do not affect the conclusion we have arrived at, it is not necessary to state the substance of them.

The complainants claim that Jones and Lockart each furnished a part of the cotton to pay the obligation.

We will first inquire as to the payment by Jones. The cotton, which it is insisted he paid, he obtained from Hamilton Jones, and when it was weighed out to him, he only marked fifty-one bales, of the eighty-one he received, in the defendant's name; forty of these were the most inferior of the lot, and the others he marked in his own name. This conduct clearly evinced his intention, at that time, which was after the first day of January, to apply only the fifty-one bales towards the payment of the debt; and it was to these, we presume, Jones referred when he told the defendant that the cotton was at Hamilton Jones', ready for him, and requested him to get it, and was the same cotton which was spoken of in the conversation between the defendant and Hamilton Jones. But, unless we shall find that every thing had been done in respect to the cotton which was requisite to transfer the right of property in it to the defendant, it will be unnecessary to determine

whether the conversations had reference to all the cotton that he got from Hamilton Jones, or only to the fifty-one bales which he marked in the defendant's name.

"No sale is complete, so as to vest in the vendee an immediate right of property, so long as any thing remains to be done between the buyer and seller in relation to the goods." *Story on Sales,* sec. 296; *Benjamin on Sales,* 221.

Thus, in *Hanson v. Meyer,* 6 *East,* 614, the vendee agreed to purchase all the starch of the vendor, then lying at the warehouse of a third person, at £6 per cwt., by bill, at two months, which was in papers, but the exact weight was not then ascertained, but was to be ascertained afterwards, and fourteen days were to be allowed for the delivery, and the vendor gave a note to the vendee, addressed to the warehouse keeper, directing him to weigh and deliver to the vendee all his starch; and part was weighed and delivered, and then the purchaser became bankrupt. It was held that the right of property in the part unweighed had not passed to the vendee. And Lord Ellenborough said, the act of weighing was in the nature of a condition precedent to the passing of the property, by the terms of the contract, because "the price is made to depend upon the weight."

In *Simmons v. Swift,* 5 *B. & C.,* 857, the following agreement was signed by the plaintiff and defendant: "I have this day sold the bark at Redbrook, at £9 5s. per ton, of twenty-one hundred weight, to Hezekiah Swift, which he agrees to take and pay for it on the 30th of November. Eight tons and fourteen hundred weight of the bark was weighed to the defendant, and was taken away by him and his servants. Eight or nine days after part of the bark had been so removed, the person upon whose premises at Redbrook the bark was stacked, met the defendant, and asked him when he intended to take the remainder away, as it was stacked over a part of a saw-pit he wanted to use. The defendant answered that he should take it away in a few days. The defendant did not take away the remainder of the bark, nor was it weighed; and, towards

the latter end of November, it was considerably injured by the overflowing of the river Wye. There was sufficient time for the defendant to have removed the whole of the bark before the flood happened. The court held that the property had not vested in the defendant; and BAYLEY, J., said: "Generally speaking, where a bargain is made for the purchase of goods, and nothing is said about payment or delivery, the property passes immediately, so as to cast upon the purchaser all future risk, if nothing further remains to be done to the goods, although he can not take them away without paying the price. If any thing remains to be done on the part of the seller, until that is done the property is not changed." And, in the case of *Williams v. Allen, et al.*, 10 *Humph.*, 337, the plaintiff bargained with the defendants for the purchase of a quantity of corn, put up in pens. The bargain was for all the corn in the pens, at the price of one dollar per barrel, and the quantity was to be ascertained by actual measurement. Before the corn was measured, it was swept off by a flood and wholly lost. After the purchase, the plaintiff assumed to be the owner of the corn, and forbade an officer to levy on it as the defendants' property, stating that it belonged to him; that he had bought it and paid part of the price, and he had, between the time of the contract and the loss, let the defendants have a horse, some pork, and some money towards the payment of the price; to recover the value of which the suit was brought. The court held that the right of property in the corn was in the seller, at the time of its destruction. *Busk v. Davis*, 2 *M. & S.*, 397; *Ward v. Shaw*, 7 *Wend.*, 404; *Downer v. Thompson*, 2 *Hill*, 137; *Andrew v. Deitrich*, 14 *Wend.*, 31; *Kaufman & Co. v. Stone*, *ante.*

The weighing of the cotton, when it was turned over to Jones, was to ascertain the quantity and value, to complete the sale and transfer the property in it to him, and there is no evidence that it was weighed with defendant's concurrence, or that he ever acquiesced in it.

Although the defendant spoke of the cotton as his own; and gave directions for its safe-keeping and preservation, it had no

such effect as to transfer the right of property from Jones to himself; and if it affords any presumption that the quantity and value had been ascertained, and the delivery thereby completed, it is repelled by the circumstances under which such assumption of ownership was made, and other facts in the case, which satisfactorily show that the cotton was not weighed after Jones became the owner of it.

The weight and value not having been ascertained, the property in the cotton remained in Jones, and the loss occasioned by its destruction must therefore be borne by him.

There is even less proof of a delivery of the cotton which is claimed to have been paid by Lockart. The weighing of that did not take place until some time in May or June, and within a few days of the burning of the cotton in the country, and was, so far as is shown by the evidence, without the defendant's concurrence or knowledge, and the object of weighing it then very clearly appears to have been to shift the loss by its destruction, which was then imminent, from himself to the defendant. This is evident, also, from the fact that the eighty-five bales weighed by him, together with the eighty-one claimed to have been furnished by Jones, amounted to eighty-three thousand six hundred and forty-six pounds, and was three thousand six hundred and forty-six pounds more than the quantity required for the payment of the obligations.

If the defendant was bound by his contract to accept the cotton, and they wished to transfer it to him in order to extinguish their obligations, and relieve themselves from responsibility on account of it, they might easily have done so by giving him notice that they should at a certain time weigh and set it apart to him, and if he did not attend they could have proceeded so to weigh and set it apart, and the property would have vested in him and been at his risk.

Besides these considerations, which go to disprove the payment, there is the pregnant fact, that they suffered the obligations to remain in the defendant's hands long after the alleged delivery of the cotton, and until the time of its destruction.

The question, whether the measure of damages on the obligation payable in cotton was the sum of money specified in it, or the value of the cotton on the day appointed for its delivery, was not presented directly in the pleadings, nor raised by counsel here. The court below, in its decree, treated it as a contract for the payment of money, and though we do not undertake to say what the rule in that class of cases is or should be, a matter left in doubt by the authorities, we think the *res gesta* and circumstances of the present case indicate that the intention of the parties was to contract for the payment of the sum of money specified in the obligation, or a delivery of the cotton by the day appointed, at the option of the obligors, in lieu of it.    3 *Parsons' Con.*, 215.

The decree of the court below is affirmed.