## ROBINSON & WILDER *vs.* DAUCHY & FLOOD.

*Prima facie*, the law of a neighboring state is like our own; and when it is not proved to be otherwise, our courts act on their own laws.

Where goods are *feloniously* obtained, the owner may recover them, even as against the *bona fide* purchaser from the thief or fraudulent vendee.

Where goods are obtained *fraudulently*, but not *feloniously*, a purchaser from the fraudulent holder cannot defeat the claim of the original owner, unless he purchased in good faith and without notice of the fraud.

Where a party purchased from one who had fraudulently obtained goods, and on such purchase *parted with no new consideration*, such purchase being out of the usual course, at a sum less than the value of the goods, under circumstances of

great suspicion—such as altered and defaced marks upon the boxes, &c.—it was *held* that he was not a *bona fide* purchaser.

A witness, competent in other respects to testify, is not to be excluded merely because he is the attorney on record of the party in whose behalf he is called.

This was an action of replevin, brought to recover sundry articles of merchandise which were claimed to be the property of the plaintiffs. The declaration contained three counts for the detention of the goods by the defendants; alleging that they received the same from the plaintiffs, Aaron P. Kline and Nehemiah Hodge, respectively, to be delivered to the plaintiffs when requested, and that the defendants refused to deliver the goods to the plaintiffs, although often requested. The plea was the general issue. The cause was tried before PARKER, C. Judge, at the Rensselaer circuit, in Nov. 1846. On the trial, the plaintiffs proved that they were grocers, residing at Boston, Mass.; that in Sept. 1845, a man, of the name of Aaron P. Kline, came to their store, and was said to be of North Adams; that he purchased the goods in question of the plaintiffs. The bill of the goods was dated Sept. 5th, and amounted to $318,64. It appeared that the bill embraced both dry goods and groceries; the groceries amounted to $236,66. The clerk of the plaintiffs testified that he afterwards saw all of the goods, except a little soap and some candles, in the store of Dauchy & Flood, in the possession of the defendants, at Troy; that all the property which the sheriff took on the writ of replevin, the witness then remembered to be the property of the plaintiffs; that when the goods were sold, at Boston, they were sent to the railroad depot, marked with the letter K. in a diamond, Pittsfield; that being the proper course to send them to North Adams, Mass. That witness first saw Kline in May, when he came introduced to witness by one Church, and purchased goods to the amount of 6 or $700; that witness did not see him again until September. In September he said he was worth from $2000 to $3000, and making money, and did not owe over $700; that he was prompt, and merchants would find out he would make prompt payment, so that they would be anxious to sell him before the year was out; and he could prove he had

Robinson *v.* Dauchy.

put over $3000 capital in his business. The witness further testified that in September, 1845, Kline came into the store of the plaintiffs and presented the note that he had given for the May purchase, cancelled; that he held it out and said, " that is the way I do my business;" that the note was not then due, and had been sent by the plaintiffs to the Adams Bank for collection; that the plaintiffs would not have trusted Kline but for his representations; that after the goods were sent directed to the depot at Pittsfield, the witness did not see them again until he saw them at the defendants' store in Troy, which was about the 23d of September; that four or five days after the sale, reports came to Boston that Kline had failed, and that his store was shut up while he was in Boston making these purchases; that when the witness saw the goods, the mark of the diamond enclosing the letter K. was erased upon some of them, or partly erased, and a circle enclosing the letter H. marked in its place; that in other places he found both marks. Mr. Townsend, the law partner of the plaintiffs' attorney, testified that he was present at the defendants' store when the property mentioned in the declaration was pointed out by the clerk of the plaintiffs; that he found the property before it was taken by replevin; that he ascertained that the charges against the goods, for freight, amounted to about $35, which sum he tendered to the defendants, but they refused to receive it; that the witness then demanded the goods named in the declaration, but they refused to give them up. The agent of the western railroad, at Pittsfield, testified that on the 25th of Sept. 1845, he saw the goods in question at the store of the defendants; with the exception of one hogshead of sugar, which he was not able to identify; that he had before seen them, on their receipt at the Pittsfield station, marked as above mentioned, where they were delivered to N. Hodge, upon an order signed by Kline; and that they were forwarded by railroad to East Albany, subject to the further directions of Hodge in person. Kline himself was examined as a witness, and testified that at the time of the purchase of the goods by him, from the plaintiffs, he was indebted, to various persons, to an amount exceeding $5000; no

Robinson *v.* Dauchy.

part of which had since been paid ; that at the time of the purchase, and before the sale and delivery of the goods to him, he stated to one of the plaintiffs that he had been doing a good business, and had made money since his former purchase from the plaintiffs in May previous, and that he was worth $3000 or $4000, and owed in all but $800 or $900; that these representations he did not, at the time of testifying, believe to have been true ; that he was induced to make them by the persuasion of others ; that the goods which he bought of the plaintiffs were sent to the western railroad depot at Boston, marked [K.] Pittsfield depot; that at Pittsfield, where he next saw them, those marks were erased and (H.) was placed as a mark upon them ; that they were there taken possession of by N. Hodge, and were conveyed to Troy, in order to avoid attachments of Kline's creditors; that prior to the change of marks, and the transfer of possession of the goods to Hodge, Kline's store at North Adams had been closed by attaching creditors, and was known to be so, by himself and Hodge ; and the goods purchased of the plaintiffs had never been paid for by the witness. It was also proved that the goods in question were sold to the defendants by Hodge; that when the same were demanded of the defendants they claimed the goods ; stating that Hodge said he had authority from Kline to sell them ; that the defendants said Hodge stated that Kline was in embarrassed circumstances, and was afraid the goods would be attached ; that he had brought the goods into this state for Mr. Kline, to prevent their being taken upon attachments against Kline. One of the persons then present observed to one of the defendants that he had got a good bargain in the goods; to which he said, " Yes, or I should not have bought them. I do not know but there might be some risk about them, and therefore bought them at a bargain. I know this Hodge will hold me responsible for all these goods, if he can." The plaintiffs then rested their cause, and the defendants moved for a nonsuit ; on the ground that they were purchasers of the goods in question for a valuable consideration, without notice of the alleged false pretences

made by Kline, on the purchase of the goods from the plaintiffs. The circuit judge denied this motion.

The defendants examined Hodge, as a witness; who testified that on the 5th of September, 1845, after Kline's store was closed, he was employed by one Charles Wilber, an endorser of Kline's paper to the amount of $1200, to get him secured; that on the 10th of September he went to Pittsfield and received the goods, after having been called upon by Kline; that he sold the goods to the defendants, who paid him for them; that he acted for Wilber, and knew nothing about the circumstances under which they were purchased; that he told the defendants he had some goods which were turned out to him as security; that he said nothing about their going out of Massachusetts to avoid attachments; that the defendants bought only the groceries, the dry goods being disposed of elsewhere; that the groceries were sold to the defendants for a little short of $190; that the marks were altered by witness' direction, at Greenbush; and that the defendants knew the goods came by railroad. Another witness testified that at the time of the sale of the goods to the defendants by Hodge, one of the defendants told Hodge that if there was any thing wrong about the goods, in any way, shape or manner, he did not want to have any thing to do with them; that it was mentioned the goods were turned out to a man of the name of Wilber, to secure a debt; that Hodge observed he wanted to get as much as he could, as Wilber would lose at the best.

The testimony being closed, the circuit judge charged the jury that if the goods were obtained by Kline by false pretences, the sale was void as to him, and as to all others obtaining title from him, except purchasers in good faith. That if the defendants were purchasers in good faith they could hold them; and that the verdict, in that case, must be for the defendants. But that if the defendants were not purchasers in good faith, the plaintiffs were entitled to recover.

That if the defendants purchased with notice of the false pretences, or if they purchased with a view of aiding Kline or Hodge to defraud Kline's Massachusetts creditors, other than

Robinson v. Dauchy.

the plaintiffs, who had or were entitled to attachments; or if they were bought not in the usual course of trade, and under circumstances of suspicion clearly indicating that a fraud was being practised on his creditors generally, then they were not bona fide purchasers. To this part of the charge the defendants' counsel excepted.

The judge also charged that where goods are obtained by fraud or false pretences, if the person who obtains them by such fraud sells the same to a bona fide purchaser, such purchaser acquires a title against the original owner of the goods. That it is only in those cases where a suit is brought by the vendor against the vendee, or against some person not a bona fide purchaser, that the vendor can sustain an action, where he has been defrauded of his goods; unless the purchaser was put upon his guard when he purchased, or had reason to suppose, at the time of such purchase, they were fraudulently obtained. To this part of the charge the plaintiffs' counsel excepted. The jury having found a verdict for the plaintiffs, the defendants, upon a case, moved for a new trial.

*R. M. Townsend,* for the plaintiffs. I. The goods were purchased of the plaintiffs through a fraud on the part of Kline, which amounted to a felony. Felony means an offence for which the offender is liable to be punished by imprisonment in the state prison. (2 *R. S.* 702, § 30.) A false representation or statement of one's pecuniary circumstances and condition, is a "false pretence," within the meaning of the statute on this subject. (2 *R. S.* 677, § 53. · 14 *Wend.* 546.) The law of Massachusetts on this subject is precisely like our own. (21 *Pick.* 519, 520. 19 *Id.* 184, 185. 10 *Metcalf,* 522. 7 *Id.* 462, 3.) The law of another state, *prima facie,* is like our own; and where no proof is given on the subject, our courts will act on their own laws. (2 *Hill,* 201, 2. 2 *Hill's South Car. Rep.* 319. 22 *Wend.* 322 *to* 324.) Hence this case is to be governed by the law of this state. (22 *Wend.* 322 *to* 324.)

II. Where goods are obtained by false pretences amounting to a *felony,* no title passes, and the vendor may retake the

**Vol. III.**	4

Robinson v. Dauchy.

goods, even as against *bona fide purchasers* from the fraudu-
lent vendee. (14 *Wend.* 31, 36.. 20 *Id.* 275, 6. 22 *Id.* 285,
294, 5, 318, *et seq.* 11 *Id.* 80. 15 *John.* 147. 15 *Mass.
Rep*, 156.) III, If the above positions are correct, the circuit
judge's charge was too favorable to the defendants. In any
view, however, which can be taken of the case, the defendants
were liable, unless they were *bona fide* purchasers. The only
parts of the charge excepted to were those in which the circuit
judge put the question to the jury whether the defendants
were *bona fide* purchasers. Hodge was not a *bona fide* pur-
chaser; at least the jury had a right to find such to be the
fact, under the evidence. He took the goods as an agent, *to
secure a precedent debt,* under very suspicious circumstances;
and his principal was probably a co-conspirator with Kline.
There was no new consideration paid for the goods by Hodge.
Nor were the defendants *bona fide* purchasers; at all events the
jury had a right to find that they were not. The goods came
to them out of their ordinary course; were purchased at much
less than their value; were marked in an unusual manner;
and the defendants were put upon inquiry; their suspicions
were aroused, &c. As to who are and who are not *bona fide*
purchasers, within the rule laid down by the circuit judge, see
13 *Wend.* 570; 20 *Id.* 279. That one receiving property from
a fraudulent vendee, gets no title unless he is a *bona fide* pur-
chaser, even where the fraud is not indictable, see 1 *Hill,*
302, 311; 15 *Mass. Rep*, 156; 15 *John. Rep.* 147.

*E. Pearson,* for the defendants. The defendants bought
the goods in question and paid value for them. Their title,
therefore, will be held to be perfect, and all presumptions are to
be in its favor. The onus is on the plaintiffs; and to recover,
they must make out, beyond a reasonable doubt, a clear better
title. They contend they have proved Kline bought the goods
of them by false pretenses in Massachusetts, and that defen-
dants bought with notice. Kline has not been convicted of the
crime with which he is charged. On the contrary, it appears
from the testimony that he is still at large, and resides in Bos-

ton.   Nor could he be convicted, on an indictment for obtaining the goods by false pretences, unless at the time the false statements were made, he knew them to be false.   He says, he does not *now* think them *to have been* true ; implying that he *then* thought otherwise, and that it may *now* be otherwise.   Nor is the commission of the crime by Kline proved; for the purposes of a civil suit, unless the plaintiffs show that they have sustained damage thereby.   (3 *Bulst.* 95, *cited* 3 *Term Rep.* 56. 7 *Wend.* 1, 18.   3 *Hill,* 169.)   Parting with the goods does not prove a loss.   The vendor parts with his goods in all sales. There was no proof that Kline had not enough to pay his debts. Attachments are often issued, in Massachusetts, against solvent persons, and assignees appointed.   And proceeding in this manner is in fact proof that the debtor has property.   The plaintiffs may therefore get their debt twice.   They certainly will get part of it twice, if they recover.   This will be unjust. For this reason, and also for the error of the judge in charging the jury that it was not necessary it should appear that the plaintiffs had sustained damage, there should be a new trial. But if the commission of the crime was proved, it could not invalidate the defendants' purchase.   (4 *Paige,* 537.   6 *Metcalf,* 68, 73, 74.)   It does not appear that it would invalidate the purchase, even in Massachusetts.   If it would have that effect, the plaintiffs should prove it.   (8 *John. Rep.* 189, 193.)   The *lex loci* governs as to the validity, &c. of contracts.   (*Minot's Dig.* 126, 127.)   The *lex domicilii* governs as respects the validity of sales, &c.   (*Story's Conf. of Laws,* §§ 383, 384.   1 *H. Blk. Rep.* 690.)   If it did appear that the commission of the crime would have the effect to invalidate the sale, in Massachusetts, having occurred there, it could not have the same effect in this state. (*Story's Conf. of Laws,* §§ 247, 248, 621 *to* 623.   1 *H. Blk. Rep.* 135.   14 *John. Rep.* 338, 340.   17 *Mass. Rep.* 515.   14 *Id.* 234.)   The judge erred in refusing to charge that the defendants' purchase was valid unless connected with the original purchase by Kline.   (*Story's Conf. of Laws,* §§ 247, 248.)   The purchase by the defendants was not invalidated by their being told, (as Townsend swears,) that the goods were brought here

Robinson v. Dauchy.

for fear that others would attach them.   The plaintiffs had no attachments themselves ; and the defendants were not told that any attachments were issued or had a lien upon them; only that they might be issued.   This is mere conversation. (6 *Wend.* 277.   *Story on Const.* 671.)   Townsend was under the bias of an attorney for non-resident plaintiffs, no security for costs having been given ; and such testimony has been held incompetent.   (10 *Law Rep.* 136.)   But even if the defendants had been told of attachments by others, the plaintiffs could take no advantage of it.   It would not benefit the plaintiffs to have others attach or hold the goods.   The goods were turned out to pay an accommodation endorser, and this is a legal and righteous act.   (6 *Hill,* 97.   4 *Id.* 158.   6 *Cowen,* 284.   4 *East,* 1.)   And notice of a legal act, or of something allowed by law, or not wrong, as of liability to be attached, or attachments not a lien, cannot affect the defendants' purchase, nor divest them of the character of bona fide purchasers.   The defendants had no notice that attachments were out.   Besides, they were Massachusetts attachments, (if any,) and will not be taken notice of by our courts.   (*Story's Conf.* 278, 421, 422.   3 *Caines' Rep.* 154.   9 *John. Rep.* 221.   12 *Id.* 99.)   No such proof was given of any attachments, as the law requires.   (12 *John. Rep.* 456.   6 *Id.* 9.   7 *Id.* 19.   7 *Wend.* 281.   8 *Id.* 480.   10 *Id.* 75.)   The defendants are bona fide purchasers ; and the judge ought so to have charged, as requested.   If this is a question of fact, the court can review it on a case.   Sufficiency of notice and of consideration are questions of law.   (13 *Wend.* 571, 572.   24 *Id.* 115.)   It is at least a mixed question.   (13 *Pick.* 550.)   If a question of fraud, it is for the court to decide it.   (9 *John. Rep.* 337.   7 *Cowen,* 301.   2 *Wend.* 596.)   In his charge the judge says, "if they (the defendants) purchased with a view of aiding Kline or Hodge to defraud Kline's Massachusetts creditors, (other than the plaintiffs,) who were entitled to attachments, they were not bona fide purchasers."   There was no proof to justify the proposition, and it biased the jury to think there was.   In this the judge erred to our hurt. " Other than the plaintiffs " exempts them from the fraud sup-

Robinson *v.* Dauchy.

posed by the judge. And they cannot set up that by which they are not injured, but from which they are expressly exempted, and that too against the very persons who exempt them. Therefore the judge erred in deciding that the defendants would not be bona fide purchasers in the case he supposed, and thus biasing the jury by error in fact and in law, to decide the main point in the case against us. The defendants gave full value for the goods. They had no notice of the alleged false pretences. They are therefore bona fide purchasers. Tomlin's dictionary defines *bona fide*, really. Defendants are real or actual purchasers. Both parties intended a purchase, it was not a sham. As to what is a bona fide purchaser, see 10 *John. Rep.* 457, *cited in* 17 *Wend.* 30, 25 ; 1 *R. S.* 756, § 1 ; 2 *Id.* 359, § 4 ; 9 *Wend.* 157. Without notice, means without notice, in this case, of Kline's false pretences. These cases show that he buys without notice, who has no notice of the fraud by which the goods were obtained. (2 *Term Rep.* 750. 5 *Id.* 175. 6 *Metc.* 68. 11 *Serg. & Rawle*, 377. 12 *Pick.* 313. 1 *Cowen*, 622. 14 *John. Rep.* 415. 5 *John. Ch. Rep.* 54. 13 *Wend.* 570 to 572.) The statute has not changed the offence with which Kline is charged, at common law, and cannot, except expressly or by necessary implication. (4 *Mass. Rep.* 439. *Story on Const.* 407. 3 *Hill*, 396. 6 *Id.* 144.) As to what the common law is, see 1 *R. L.* 41 ; 1 *R. S.* 54 ; 1 *Mass. Rep.* 60, 61 ; 2 *Id.* 533, 534 ; 8 *Pick.* 315 to 317 ; 16 *Id.* 115, 116. If the charge of the judge may have improperly impressed the jury against the defendants, or the chances are equal that it did, the verdict ought to be set aside. (3 *Wend.* 418. 11 *Id.* 83. 4 *Hill*, 271.)

*By the Court*, WILLARD, J. The goods in question were purchased of the plaintiffs under false pretences amounting to a felony. (2 *R. S.* 677, § 53. *Id.* 702, § 30. *The People* v. *Haynes*, 14 *Wend.* 546.) *Prima facie*, the law of Massachusetts, where the fraud was committed, is like our own ; and when no proof is given on the subject, our courts will act on their own laws. (2 *Hill*, 201, 2. 22 *Wend.* 322 to 324. 2

Robinson *v.* Dauchy.

*Hill's S. C. Rep.* 319.    *Note to Hoffman* v. *Carow,* 22 *Wend.* 285.)   Where goods are stolen, or obtained by means of a fraud amounting to a felony, the vendor may retake the goods, even as against the *bona fide* purchaser from the thief, or the fraudulent vendee. (*Andrew* v. *Dietrich,* 14 *Wend.* 31, 36.  20 *Id.* 275, 6.  22 *Id.* 285, 294, 5, 318, *et seq.*  11 *Id.* 80.)

The charge of the circuit judge was more favorable to the defendants than was warranted by law and the facts.   The charge, by submitting to the jury the question as to the *good faith* of the defendants' purchase, and *in* telling them a purchaser in good faith from the fraudulent vendee, who had obtained them by fraud or false pretences, could hold them as against the real owner, virtually instructed the jury that there was no difference between a *fraudulent* and a *felonious* acquisition of property ; and that the *bona fide* purchaser, in both cases, was alike protected.   This error in the charge was favorable to the defendants, and cannot be complained of by them. That it was not necessary that Kline should have been convicted of the felony, to enable the owner to reclaim his goods, see 22 *Wend.* 285, *note.*   The rule on that subject, in this country, is different from that prevailing in England, arising from the statute which prevents a merger of the individual injury in the crime against the public.

But supposing the goods were not *feloniously* obtained by Kline from the plaintiffs, they were clearly acquired by him fraudulently.   Even in such case, the defendants, deriving title from the fraudulent vendee, cannot defeat the claim of the vendor, unless their purchase was in good faith and without notice of the fraud.   They may shelter themselves, indeed, under Hodge, if his purchase was in good faith and for a valuable consideration.   But it is plain that Hodge did not purchase in good faith and without notice.   He parted with no new consideration.   He took them to recover a precedent debt due to his principal, under circumstances of great suspicion.   And the defendants who purchased from him, did so out of the usual course ; at a sum much less than their value ; with unusual and altered and defaced marks upon them, calculated to arouse

suspicion and stimulate inquiry. That such a purchaser acquires no title, as against the original owner, who has been defrauded, see 1 *Hill,* 302, 311; 15 *Mass. Rep.* 156; 15 *John. Rep.* 147. The original owner under such circumstances has a right to follow the goods into the hands of the *mala fide* purchaser. He is not bound first to exhaust his remedy against the person by whom he was *first* defrauded.

The defendants' counsel, on the argument of this cause, raised an objection to the competency of the plaintiffs' attorney as a witness. The objection on the score of *interest* was waived at the trial. It is now for the first time put upon the ground that he was the *attorney,* and that a person standing in that relation should be excluded from testifying, upon principles of public policy. We have adopted no such rule in this state, even if the objection in this stage of the cause could be listened to at all. The testimony of a witness standing in that relation to one of the parties to the suit, is open to observation before the jury.

We see no reason to disturb the verdict. The motion for a new trial must therefore be denied.

---

SAME TERM.	*Before the same Justices.*