GEORGE T. BEALL ET AL. *v.* THE TERRITORY OF NEW MEXICO, USE OF W. W. GRIFFIN, ADMINISTRATOR DE BONIS NON OF CHARLES S. HINCKLEY, DECEASED.

DEMURRER WAIVED BY PLEADING OVER.—Pleading over to a declaration or petition adjudged good on demurrer, waives the demurrer, though an exception has been taken.

AMENDMENT STRIKING OUT PARTY AFTER PLEA IN ABATEMENT.—An order allowing a plaintiff to amend by striking out the name of a defendant as improperly joined, after a plea in abatement for such misjoinder is filed, but before it is called up, is not erroneous, no injury appearing to have resulted to any of the parties.

AFFIDAVIT FOR CONTINUANCE FOR ABSENCE OF WITNESSES.—An affidavit for a continuance on the ground of the absence of material witnesses must show what is expected to be proved by them.

LACHES OF CO-DEFENDANTS.—The laches of co-defendants in procuring counsel or the attendance of witnesses, etc., ought not to influence the court to grant a continuance.

REFUSAL TO ALLOW TIME TO APPLY FOR CHANGE OF VENUE.—It is not error to refuse to allow time to prepare an application for a change of venue, after a day for the trial has been set and a motion for a continuance has been overruled.

COPY OF PAPER IN POSSESSION OF OTHER PARTY NEED NOT BE FILED.—It is a sufficient reason for not filing an original paper or a copy of it, as required by statute, before introducing such copy in evidence, if it is shown that the original is in the possession of the adverse party.

VARIANCE BETWEEN ORIGINAL AND COPY FILED, AMENDMENT OF.—Where the copy of an administrator's bond filed in court describes the intestate as "Charles S. H——," while the original describes him as "C. S.

Points decided.

H——," it is not error to permit an amendment so as to conform the copy to the original and then to receive the latter in evidence.

ATTORNEY COMPETENT WITNESS FOR CLIENT.—An attorney is a competent witness for his client.

FORMER ADMINISTRATOR COMPETENT WITNESS FOR SUCCESSOR.—A former administrator *de bonis non* is a competent witness for one subsequently appointed, in a suit relating to the estate, where such witness is not shown to be interested in the event of the suit.

EXCLUSION OF IRRELEVANT EVIDENCE.—The exclusion of evidence irrelevant to the issue to be tried is not erroneous.

INSTRUCTIONS EXCEPTED TO AS A WHOLE.—Exceptions to instructions must be specific or the instructions will not be reviewed, and if excepted to as a whole, all must be affirmed if one is found correct.

REFUSAL OF CORRECT INSTRUCTIONS NOT ERROR, WHEN.—It is not error to refuse instructions asked for by a party, even though correct, where the instructions already given cover the entire case and submit it properly to the jury.

INFORMAL VERDICT, CORRECTION OF.—Where a jury find for the plaintiff in an action on an administrator's bond "the sum demanded with interest at six per cent.," it is not error for the court to aid them in putting such verdict into proper form, so as to show that they find for the plaintiff "the sum demanded, and assess his damages at," etc.

OBJECTIONS TO ARGUMENTS OF COUNSEL.—The appellate court will not consider an objection urged below as a ground for a new trial, that the opposing counsel used "improper arguments," where it does not appear what the arguments were, or that the court below was applied to for correction at the time, and proper exceptions taken.

FAILURE TO COMMIT DOCUMENTARY EVIDENCE TO JURY.—It is not a ground for a new trial that the judge did not, when the jury retired, commit to their hands the papers and documents used as evidence on the trial.

ACTION ON ADMINISTRATOR'S BOND.—The provisions of the statutes providing penalties against administrators for not exhibiting their accounts as required by law, do not preclude an action on an administrator's bond to recover damages for the loss of the estate through his unfaithfulness or neglect.

WHO MAY SUE ON ADMINISTRATOR'S BOND.—The administrator *de bonis non* is the proper person to sue on a former administrator's bond for a failure to deliver over the assets of the estate.

PRINCIPAL AND SURETIES ON SUCH BOND SUED JOINTLY.—An action may be maintained against the principal and sureties jointly for a breach of an administration bond, and judgment against the principal before proceeding against the sureties is unnecessary.

SURETIES ON SUCH BOND LIABLE FOR PRINCIPAL'S NON-FEASANCE.—Sureties on an administration bond are liable, not only for the principal's malfeasance as to money of the estate coming into his hands, but also for his non-feasance in not collecting the assets.

ADMINISTRATOR'S FAILURE TO COLLECT INTESTATE'S SHARE IN PARTNERSHIP.—An administrator failing to collect the share of his intestate in a

partnership, but selling such interest to the surviving partners, or mak-
ing an arrangement with them to retain such share at a valuation, but
neglecting, until his resignation and until the partners became embar-
rassed, to collect the amount, is liable therefor, with his sureties, in an
action on his bond, and the administrator *de bonis non* need not first at-
tempt a collection from the surviving partners.

APPEAL from the district court for Santa Fe county. The
case appears from the opinion.

*Benedict and Clever,* for the appellants.

*S. B. Elkins,* for the appellee.

By Court, JOHNSON, J.:

The second of November, 1866, George T. Beall, one of
the plaintiffs in error in this cause, became administrator
and executor of the estate of Charles S. Hinckley, late of
Santa Fe county, deceased, giving bond to the territory of
New Mexico, in the sum of one hundred and twenty thou-
sand dollars, with securities, Abraham Staab, Jose Manuel
Gallegos, Sigmund Seligman, Miguel E. Pino, and Emanuel
Spiegelberg. This bond, after reciting that, whereas the
said principal, George T. Beall, had on that day (November
2, 1866) been appointed, by the probate judge of the county
of Santa Fe, administrator and executor of the goods and
estate of Charles S. Hinckley, deceased, according to the
last will and testament of the deceased, it was conditioned
that, if said Beall, executor and administrator, should ac-
count for, pay, and deliver all moneys and effects of said
estate to the legal heirs of deceased, and execute the last
testamentary will of said deceased, and do all other things
relative to said administration as required by law, or by
order of the probate court of the county of Santa Fe, or
whatever other court having jurisdiction in the premises,
then, and in that case, this obligation should be void and
of no effect; otherwise to remain in full force and effect.
In January, 1867, Beal made an inventory of the property
of the deceased, showing the assets of the estate to be of
the value of fifty-three thousand five hundred and thirty-one
dollars and fifty-six cents, of which forty-six thousand five

hundred and thirty-eight dollars and sixty cents are stated in the inventory as the value of the deceased's interest, at the time of his death, in a business copartnership composed of deceased, Charles H. Blake, and William V. B. Wardwell. In reference to this interest Beal also says in his inventory: "The undersigned, being satisfied that the sum stated, forty-six thousand five hundred and thirty-eight dollars and sixty cents, is correct, has agreed to receive of the said Charles H. Blake and W. V. B. Wardwell in full discharge of the capital and profits of the said deceased, the aforesaid sum. The said Blake and Wardwell have agreed to pay the said sum as soon as they can arrange their affairs to do so, and within a reasonable time. The undersigned is satisfied that the said arrangement is the best he could make for the interest of the estate, and that the payment will be made in due time."

In his report of May 4, 1868, Beall stated the amount of receipts, from the beginning of his administration till that time, to be five thousand six hundred and sixty-one dollars and seventy-two cents; the estate owing him (Beall) one hundred and nine dollars and thirty-five cents; and further charges himself with the amount of forty-five thousand nine hundred and forty dollars and forty-one cents, due from Wardwell and Blake, and others. In his report of January 26, 1869, Beall states the total amount of receipts to be six thousand six hundred and eighty-nine dollars and seventy-one cents, and disbursements six thousand five hundred and fifty-seven dollars and seventy-one cents; due from himself to the estate one hundred and thirty-one dollars and ninety-six cents; and further charges himself with the amount of forty-five thousand one hundred and forty-eight dollars and five cents, due from Wardwell and Blake, and others, on the twenty-seventh of January, 1869. The probate court accepted Beall's resignation of the executor and administratorship of Hinckley's estate, held Beall responsible under all requirements of law for the assets of the estate, until delivered to his successor, and to perform everything required by law in the premises.

At February term, 1870, of the district court for the

county of Santa Fe, the territory of New Mexico, for the use of William W. Griffin, administrator *de bonis non* of the estate of Hinckley, brought suit on their bond against Beall, the former administrator and executor of the estate and his securities, claiming damages in the sum of sixty thousand dollars. The petition alleges that Beall "did not well and truly perform the duties enjoined upon him by law as executor and administrator of said estate, and did not do all other things required of him by law to be done relative to the administration of said estate;" and further assigns as breaches of the condition of the bond, that Beall, on the tenth of January, 1867, unlawfully and by verbal contract, disposed of to Charles H. Blake and William V. B. Wardwell, surviving partners of deceased, for forty-six thousand five hundred and thirty-eight dollars and sixty cents, all of the deceased's interest in the partnership, consisting of goods, wares, merchandise, real estate, mines, and credits, all of the value of sixty thousand dollars, and did not pay over and deliver such assets to the administrator *de bonis non*, or to any other person lawfully entitled to said assets; that through the want of attention, and neglect and illegal action and conduct of Beall, as executor and administrator of the estate, it became wholly lost, dissipated, and wasted.

On the first of March, 1870, all the defendants to the petition (except Emanuel Spiegelberg, who had not been summoned) filed a demurrer, which was, on the following day but one, after argument, overruled. On the same day plaintiff filed motion for leave to amend petition by striking out Luz Ortiz de Pino, administratrix of Miguel E. Pino, deceased, a defendant. On this day, also, said Luz Ortiz de Pino filed her plea in abatement, and on the same day the motion was sustained, and leave granted plaintiff to amend petition. On the fourth of March, defendant's demurrer to amend petition was heard and overruled, and then defendants (except Manuel Spiegelberg) filed plea of the general issue, to which plaintiff joined a plea of *actio non*, for that Beall had complied with all the conditions of the bond, according to their true tenor and effect, and a further plea *actio non*, for that Beall, on the twenty-seventh

of January, 1869, had settled his accounts of executor and administrator in the probate court of Santa Fe county, which accounts were duly confirmed and approved by said probate court, and that Beall afterwards resigned his executor and administratorship; that said resignation was accepted by the probate court, and Beall discharged from further liabilities and duties as executor and administrator of the estate of Hinckley. The plaintiff replied, traversing these pleas, and defendants joined issue. On the fifth of March, the defendant Beall made an affidavit for a continuance of the cause, and the cause was continued by the general order of continuance, that being the last day of the term.

At the July term, 1870, of the court below, Emanuel Spiegelberg, a defendant, having been summoned by publication to answer to petition, was, on the second day of the term, ruled to plead the next morning, and the cause was set down for trial on the fourth day of the term. On the third day of the term a demurrer to the petition, on the part of Spiegelberg, was heard and overruled. On the third day of the term defendants filed a motion for a continuance, based on the affidavits of Lehman Spiegelberg (representing himself to be the agent of the defendant, Emanuel Spiegelberg), and of the defendant, Abraham Staab, which motion, after argument, was overruled. On the twenty-first of July (fourth day of the term), the defendant, Speigelberg, pleaded the general issue, to which the plaintiff joined; and the two pleas *actio non*, to which plaintiff replied and defendant joined issue.

Then a jury was impaneled to try the issue joined between the parties, and on the fifth day of the term returned the verdict: "We, the jury, find that the said defendants do owe the said plaintiff the sum of one hundred and twenty thousand dollars, in manner and form as the said plaintiff hath complained against him, and they assess the damages of the said plaintiff, by reason of the detaining of the said debt, to forty-eight thousand dollars; that the said defendant, George T. Beall, did not well and truly observe, perform, fulfill, and keep all and singular the requirements of

the condition of the bond upon which this action is founded, according to the tenor and effect thereof, and that the said defendant, George T. Beall, was not discharged from further liabilities of, to, and for the estate of Charles S. Hinckley, deceased, by the probate court."

Upon this verdict the court below entered judgment. On the eighth day of the term the defendants moved the court to set aside the verdict of the jury and grant a new trial, which motion, after argument, was overruled. Next, defendants moved in arrest of judgment, which motion was also overruled. Next day (ninth of the term), the defendants moved for an appeal, which was granted.

The errors assigned by the plaintiffs in error, defendants in the court below, are thirteen in number:

1. "The court below erred in overruling the demurrer filed to the petition of said territory in said cause by the said now plaintiffs." After the overruling of the demurrers to the petition and amended petition, and exception by the now plaintiffs to such ruling and judgment, as appears by the transcript, said plaintiffs pleaded over, thereby waiving their demurrer. Pleading over to a declaration adjudged good on demurrer, without any reservation, is a waiver of the demurrer, as held by repeated decisions of this court: *Watkins* v. *United States,* 9 Wall. 762. Pleading over to a declaration adjudged good on demurrer is a waiver of the demurrer, and when a defendant files a rejoinder to a replication adjudged on demurrer, his act in pleading over must, for the same reason, be held to have the same effect: *Aurora City* v. *West,* 7 Id. 92; *United States* v. *Boyd,* 5 How. 51. Hence, if the plaintiffs in error wished a review by this court of the judgment of the court below on demurrer, they should not have pleaded over, but permitted the judgment on the demurrer to stand.

2. "The court below erred in permitting the plaintiff below to amend her petition by striking out of the same the name of Luz Ortiz de Pino, one of the defendants, whilst a plea in abatement to said petition was still pending undecided."

3. "The court below erred in permitting the plaintiff be-

low to proceed with said cause, without a trial or judgment upon said plea in abatement." The transcript shows that Luz Ortiz de Pino, mentioned in these two assignments of error, is described in the original petition, in the said motion to amend, and in the said plea of abatement, as administratrix of the estate of Pino, deceased; that both the motion to amend and the plea in abatement were for the same object, and filed on the same day; and that the court, on the same day, granted leave to amend. Now, as this court is not informed by the transcript to the contrary, we must presume that the court below acted upon the motion to amend prior to the calling up of the plea in abatement, and as the plea in abatement was solely in behalf of Luz Ortiz de Pino, administratrix, etc., for misjoinder, and her name was stricken from the petition, she is not a party to the record in this court. Furthermore, as the statutes of this territory provide that "each party, by leave of the court, shall have leave to amend upon such terms as the court may think proper, at any time before judgment, verdict, or decree;" and as it does not appear from the record of this cause that the leave granted by the court below to amend the petition injured the lawful rights of the remaining defendants, this court will not review the alleged errors of the second and third assignments herein.

4. "The court below erred in not granting to said plaintiffs, then defendants, at the July term of the district court, 1870, a continuance of said cause." This cause, on the second day of the term referred to, had been set down for trial on the fourth day of the term, and the motion for a continuance was made on the third day of the term. This motion was based on the affidavits of Lehman Spiegelberg, agent of the defendant, Emanuel Spiegelberg, and of Abraham Staab, another defendant; neither of which affidavits, with sufficient certainty, alleged what matter put in issue by the pleadings they expected to prove by the witnesses, except what they allege a hope to prove by one J. R. Hunt, a resident of New Orleans, in the state of Louisiana, and whose testimony Beall, another defendant, said in his affidavit for a continuance at the preceding February term he

expected to be able to procure by the following term. The laches of co-defendants, either in the procurement of counsel, due diligence in securing the attendance of witnesses, or in making other necessary arrangements for defense, should not influence a court to grant a continuance, otherwise the termination of a suit might be indefinitely postponed, and in a case where the cause of action does not survive the rights of a plaintiff, might be irremediably prejudiced, or wholly sacrificed, by a single continuance. The court below did not err in denying said continuance, which was an exercise of its discretionary power.

5. "The court below erred in refusing to defendants in said court, after the application for a continuance had been refused, sufficient time to prepare an application for a change of venue in said cause." The statutes of this territory upon the subject of practice make it imperative upon the courts to grant a change of venue when the judge is interested in the suit, as when the party moving for a change of venue shall do certain things therein specified; but as the statutes do not prescribe at what stage of the proceedings application for change of venue should be made, the granting of delay for the purpose of making such application is reasonably within the discretionary powers of the court. In this case, the day of trial was fixed and the delay was asked immediately after the denial of a motion to continue the cause to another term. Under the circumstances it is evident the request was for the sole purpose of postponing the trial of the cause at that term. The provision of the statute, that " on calling of the docket, all cases shall be tried, set for trial, or continued," is imperative; and from it we are to infer that, when a cause has been set for trial, the effort of either party to delay the trial should be discountenanced by the court.

6. "The court below erred in permitting the copies of the letters of administration granted to George T. Beall to be read as evidence in said cause, and in admitting the bond of said Beall and others to be read as evidence." Reference to the transcript in the court below shows that " when the aforesaid letters of administration were offered

by plaintiffs to be read, the defendants objected on the ground that no copy of the same was filed in the cause, nor the original, but the court overruled the objection on the ground that the original was proved to be in the possession of Beall, and the letters were read to the jury." As to the admission of instruments of writing in evidence, the statute of this territory says: "And if there are any instruments of writing relied upon as evidence or as matters in any way material to the suit, the originals, or copies of the same, shall be filed with the petition if they are in the power or control of the party wishing to avail himself of them. If any papers shall be referred to, and the original, or copies not filed as above required, they shall not be used in the trial, unless the party offering them shall give some satisfactory reason why the same were not filed:" Rev. Stats. 196, secs. 21, 22. As the transcript shows that satisfactory reason was shown to the court below why the original letters of administration, or a copy of them, were not filed, the court below did not err in allowing a copy, proved by the officer who issued them, to be read in evidence. As to the second proposition of this assignment of error, the transcript says: "The bond of Beall, as administrator, was offered by plaintiffs and objected to by defendants, upon the ground that it varied from the copy filed in the case by the plaintiff, in this, that the copy read 'Charles S. Hinckley,' and the original 'C. S. Hinckley.' The court gave permission to plaintiff to amend the copy, and overruled the objection, to which the defendants excepted." The statute provides that "each party, by leave of the court, may amend upon such terms as the court may think proper, at any time before verdict, judgment, or decree:" Rev. Stats. 196, sec. 27. *Utile, per inutile non vitiatur,* says the law maxim, and as the existence of the letters "*harles*" in the copy, and their not being in the original, was not such a variance as would be introduced against them, the court below did not err in allowing these letters to be stricken from the copy and the original bond to be given in evidence.

7. "The court below erred in admitting Stephen B. Elkins, the attorney for the then plaintiffs, and a former

administrator *de bonis non* upon the estate of C. S. Hinckley, deceased, to testify as a witness on the part of said plaintiff." Authorities are on the side of the ruling of the court below as to the competency of an attorney to testify on the part of his client. "The attorney of a party is not an incompetent witness for him:" *Robinson* v. *Dauchy*, 3 Barb. 20. "Attorneys and counselors are competent witnesses for their clients in causes conducted by them:" *Little* v. *McKeon*, 1 Sandf. 607. The competency of a former administrator *de bonis non* to testify in a cause between the former administrator and a subsequent administrator *de bonis non*, as to any matter growing out of the same estate, depends entirely upon whether he had an interest or not in the result of the suit pending, and as it does not appear from the transcript that Elkins had such interest, the ruling of the court below was not erroneous.

8. "The court below erred in refusing to permit the defendants in said court to prove by Samuel Ellison the length of time necessary to settle up the business of a large commercial concern, and by Pablo Delgador, the depreciation of goods between the periods of January, 1867, and January, 1869." Evidence of the nature stated in this assignment was irrelevant to the issue joined between the parties, and therefore the court below did not err in excluding it.

9. "The court below erred in giving the instructions on the part of the plaintiff in said court, which it gave to the jury, and in refusing to give to the jury the instructions asked for on the part of the defendants in said suit." The instructions given to the jury in the court below do not appear by the transcript to have been given on the asking of the then plaintiff. They were as follows: On the part of the plaintiff in this cause it is contended that the defendant, George T. Beall, as administrator of Charles S. Hinckley, deceased, sold the interest of Hinckley's estate in the property and effects of the firm of Hinckley, Blake & Wardwell, to Blake & Wardwell, the surviving partners of the firm, for the sum of forty-six thousand five hundred and eighty-eight dollars, on credit, without taking any security for the same.

In the opinion of the court the statements of the inventory filed by Beall in the probate court, which are evidence in the cause, and the evidence of Stephen B. Elkins, establish the fact of such sale; by selling this property on credit, Beall becomes personally liable in law to the estate for the amount for which the property was sold, and if the jury, from the evidence, arrive at the same conclusion with the court, they should find for the plaintiff, and assess his damages at forty-one thousand five hundred and fifty-six dollars, with interest at six per cent., such interest to commence six months after the inventory was filed, January 10, 1867.

"The approval by the probate judge of the annual reports of Beall did not release or discharge Beall from his liability, or in any way affect such liability as regards the matter in controversy in this suit." "In this case the fact that Elkins or Griffins, as administrators, may have failed to sue, does not affect Beall's liability on his bond in any way." "If an executor sells at private sale property of an estate and fails to collect the amount due, he is personally responsible." "In civil cases the court is the law, and the jury is bound by the instructions of the court." "The fact that Elkins, as administrator, demanded any money from Black & Wardwell does not relieve George Beall of any of his responsibility for any of his acts as administrator." These instructions were excepted to as a whole in the court below, and this court, following the practice as ascertained by decisions of the supreme court of the United States, will not review exceptions to instructions to a jury unless made specifically; and, further, if one of the instructions excepted to as a whole was proper, they must all be affirmed. On the part of the defendants in the court below, five instructions to the jury were asked and the refusal of the court to give said instructions was excepted to as a whole. In the case of *Laber* v. *Cooper*, 7 Wall. 570, the supreme court of the United States held: "It was not error for the court to refuse to give the instructions asked for by the defendant, even if correct in point of law, provided those given covered the entire case, and submitted it properly to the

jury." In the present case the instructions of the court below informed the jury sufficiently of the law applicable to the case, and as to the verdict it should give in case it found certain facts from the evidence. So the ruling of the court below in these premises was not erroneous.

10. "The court below erred in receiving and recording the informal verdict of the jury, and in rendering judgment thereon."

11. "The court below erred in rendering judgment on such informal verdict, as it did render in this cause." The transcript shows that as to the "informal verdict" mentioned in both these assignments of error, the facts are that the jury returned into court the verdict in these words: "We, the jury, unanimously find for the plaintiff the sum demanded, with interest at six per cent.;" that, "then the court stated that the verdict should be put in form," which was done, "and then the court stated to the jury: Gentlemen, listen to your verdict as the court has recorded it: You say you find for the plaintiff the sum demanded, and assess his damages at forty-eight thousand dollars, and so say you all?" The jury replied in the affirmative, and the jury was discharged. Thus it appears that the jury found in favor of the plaintiff the sum claimed, with six per cent. interest, and that the court, in presence of the jury, put in definite language its finding, namely, the sum of damages by it assessed. The sum claimed by the plaintiff was, in round numbers, forty-six thousand five hundred and sixty-six dollars, and the verdict, if found in his favor, should be for that sum, and interest for three years, at six per cent. per annum, amounting to seven thousand four hundred and eighty-one dollars and eighty-eight cents, making the entire sum of damages forty-nine thousand forty-seven dollars and eighty-eight cents, one thousand forty-seven dollars and eighty-eight cents of a mistake in favor of the defendants below. Aside from this mistake, this court finds no error on the part of the court below for aiding the jury in putting its verdict into shape to express its true intent and meaning, and in afterwards recording it in such technical form as was necessary to its legal effect.

In the case of *Laber* v. *Cooper*, before cited, the supreme court of the United States held that "a verdict, unless it be a special one, is always amendable by the notes of the judge." We think it is fortunate for the litigants, in order to promote the ends of justice, that our common law courts have power to aid juries in putting their verdicts into form to give legal expression to their findings according to the evidence; otherwise it would be very rarely that a verdict would stand, unless the jury happened to have on it a man of sufficient legal attainments to put the verdict in form, before returning it into court.

12. "The court below erred in refusing to grant to said defendants a new trial in said cause.

13. "The court below erred in refusing to arrest the judgment in said cause."

In the motion to set the verdict aside and grant a new trial, fifteen reasons are alleged, and as the principles of most of these have already been discussed, it is not necessary to again advert to them, so we will proceed to notice a few of those not before considered:

1. "The jury found against the law and the evidence." The jury found according to law, as laid down by the court, and the evidence submitted to it.

5. "The court permitted the counsel for the plaintiff, in his closing argument to the jury, to make improper arguments to influence the opinions, actions, and verdict of the jury." Except in the motion itself, as above quoted, the transcript contains nothing to inform this court of the statements made and arguments used by the counsel, which the plaintiffs in error styled "improper." It is the duty of counsel to attend to their case from beginning to end, and if "improper" statements have been made, or "improper arguments" have been used by opposing counsel to the jury, they should immediately apply to the court trying the cause for correction, and if not corrected, they should except, and have the exception appear on the record with as much certainty as any other ruling of the court excepted to. Then if arguments in a court below be proper matter of re-

view, the court of review would be informed of the nature of the error sought to be corrected.

11. "The court did not commit into the hands of the jury, upon their retirement to agree upon their verdict, any of the papers, documents, writings, or records introduced in evidence in this case, and the jury retired without any of said written evidence in their hands or possession, and found their verdict without any of the said evidence being present with them." As to this allegation, comment would be superfluous.

14. "The defendants have discovered since the trial new and important evidence which was unknown to them when the trial was had." The motion itself does not disclose the nature of the evidence claimed to have been discovered, nor does it allege any document or other paper as made a part of said motion which would inform the court of the nature of such newly discovered evidence. There is, however, in the transcript, immediately following this motion, the affidavit of one of the defendants, stating that the defendants were surprised by the testimony of S. B. Elkins, and then states argumentatively what he expects might be poved as against Elkins' testimony by documents, etc. The papers referred to by the affidavit are reports, etc., recorded in the office of the clerk of the probate court for Santa Fe county, but disclose no facts which would do away with the liability of Beall, even if admissible in evidence.

The motion in arrest of judgment mentions no point which has not been hereinbefore treated of. In the argument of this cause here, some legal questions have been raised, which this court will consider, whether they were formally presented to the court below or not.

The plaintiffs in error have insisted that the only remedy authorized by law against executors and administrators on their bond is designated in the Revised Statutes, secs. 11 and 12, pp. 34 and 36, which they cite in their brief. The first of these sections prescribes what the probate judge, clerk of the probate court, and the executor and administrator shall do in the premises of issuing letters of administration, and the only liability therein prescribed is that of

BEALL *v.* TERRITORY. [Sup. Ct.

Opinion of the Court—Johnson, J.

the probate judge for issuing letters of administration without taking bond and complying in other respects with the requirements of this section. Section 12 prescribes the times when the executor or administrator shall exhibit his accounts and vouchers to the probate court for settlement; "and upon every failure so to do, may be fined not more than one hundred dollars, for the use of the county, and shall forfeit to the party injured double the damages sustained by such default." If the hypothesis of the plaintiffs in error be correct, the end and aim of the law in exacting bonds of executors and administrators is merely to secure an annual presentation of accounts to the probate court, or, in default thereof, a fine not exceeding one hundred dollars, for the use of the county, and damages to each person injured by default of such annual *ex parte* statement, but not to secure the estate itself for the benefit of heirs and legatees. It is fortunate, however, for widows, orphans, and all others entitled in the distribution of decedents' estates, that our courts take a broader view of the question. The statute requires the penalty of the bond to be not less than double the estimated value of the estate, conditioned for the faithful performance of his duties as executor or administrator.

The duties of an executor or administrator begin when his letters are issued, and end with the delivery of the estate to those entitled to receive it; and it is incidentally his duty, until such delivery, not merely to marshal the assets and liabilities of the estate, but to manage the estate in such manner that its value be not diminished. The management and care of an estate that the law requires of executors and administrators is at least such as an intelligent and prudent man should exercise in his own affairs, and to that end allows them ample compensation for their services, and reasonable expenses incurred in the interest of the estate. They are also required to settle up the estate as speedily as can be, without loss or diminution; and in some cases they are required to settle within one year from the testator's death, if the estate can not be settled within a shorter period. These are some of the duties that come within the purview

of the condition of these bonds for "faithful performance;" and if any executor or administrator fail in any of them, he and the securities on his bond are liable.

With regard to who may bring suit on executors' or administrators' bonds, the statutes are silent. In the absence of statutory provision as to who should sue on an executor's or administrator's bond, the general common law rule governs: "The action should be brought in the name of the party whose legal right has been affected against the party who committed the injury, or by or against his personal representative." An administrator *de bonis non* is no exception to the general rule, for in relation to personal property he is in law the decedent's personal representative (as the heir is the real representative of his real estate), and as much as the former executor or administrator was. He administers on such of the personal property as the former executor or administrator did not administer on, and is entitled to all the assets of the estate, in whosoever's possession they may be at the time of his appointment. Now, as the former executor's or administrator's administration is not completed in law until he makes delivery, or other disposition required by law, of the assets of the estate, the administrator *de bonis non* is entitled to such assets, to complete the administration of them.

Supposing there are existing liabilities against an estate that have not been adjusted by a former administrator or executor, it would be the crudest absurdity, in a moral as well as a legal view, to say that suit could not be brought against the administrator *de bonis non;* and on the other hand, it seems to be equally so to say that he can not sue on a liability in favor of the estate. No distribution of an estate can be made among the heirs and legatees of a decedent until the claims of all creditors against the estate are fully satisfied, and for the adjustment of these claims, and the completion of the administration of the estate by delivery of the residue, after satisfying said claims, to the lawful distributees, the personal representative of the decedent, be he styled executor, administrator, or administrator *de bonis non*, is entitled to have all assets. If any of the assets

of the estate be detained from him, it is his right and duty to sue for recovery, either of the detained article itself, or the value of it, and also to sue for damages done to any portion of the estate which belongs to his administration. Now, suppose a former executor or administrator detains assets of the estate, or has diminished its value. The administrator *de bonis non* should certainly have the right to sue in such form of action as would most speedily and certainly secure possession of the assets in kind, or their value in money, in case of waste or diminution in value; and the heirs and distributees can not sue, for the simple reason that no right of action at law in the premises belongs to them, or either of them, until the administration be entirely completed, and the share of each, after paying all liabilities of the estate, ascertained.. Under title Executor, Jacob's dictionary says: "If the executor does any waste, or misemploys the estate of the deceased, or doth anything by negligence or fraud, etc., it is a *devastavit*, and he shall be charged for so much out of his own goods: 8 Rep. 133." "And a new executor may have action against a former executor who wasted the goods of the deceased: Hob. 266."

The plaintiffs in error assert that suit can not " be prosecuted against the sureties on the executor's or administrator's bond, until a judgment shall have first been obtained against the administrator," the principal in the bond. Section 8, page 192, Revised Statutes, settles this question in few words: "No person shall be sued as indorser on security unless suit has been first or simultaneously brought and prosecuted in good faith against the principal," and there is no statutory provision making sureties on an executor's or administrator's bond an exception to this rule.

The plaintiffs in error also assume that "the sureties of an executor or administrator are not liable for anything, except it should have come into the hands of the executor or administrator." The condition of the executor's or administrator's bond required by statute is for " the faithful performance of his duties," in such capacity, and it is a question of law what he should do, or what he should not do, therein, *i. e.*, to determine what is a "faithful perform-

ance of his duties." The law considers that immediately on the issuing of letters of administration, or executorship, the entire estate of the decedent vests in his personal representatives, and, we expect, it then becomes his duty to take charge of the same and secure it from loss.

It is not alone for the "faithful performance of his duties," in the administration of such portions of the estate as may come to mere manual possession, that such bond is required and given, but the liability extends to compensation for loss or damages resulting to the estate from non-feasance or misfeasance as well as malfeasance, on the part of the principal.

It was not essential as a preliminary to the bringing of this suit in the court below, that there should have been "any judgment in the probate court, or elsewhere, against him, for the amount sued for, or a judgment against him for a *devastavit*." The jurisdiction of the probate courts is limited by statute, and when the probate court of Santa Fe county accepted the resignation of Beall as executor and administrator, its jurisdiction as to him, in that capacity, ceased. The gist of this action in the court below is the alleged *devastavit*, and the truth of it tried by a jury, and its determination given in the verdict.

In law, the partnership of the decedent, Hinckley, with Wardwell and Blake, terminated on the death of Hinckley: *Griswold* v. *Waddington*, 15 Johns. 57; 16 Id. 438. "It is the duty of a survivor [of a partnership] to furnish the representatives of the deceased partner with a full statement of the assets. He must dispose of the property to the best advantage, and can not take it to himself at a valuation, without their [the representatives'] assent:" *Ogden* v. *Astor*, 4 Sandf. 311. The evidence at the trial in the court below shows that, at the time of his death, Hinckley was a partner with Wardwell and Blake, doing business at Fort Craig and other places in this territory; that one of Beall's earliest acts of administration of the estate was to dispose of the interests of the deceased in the firm to the surviving partners for the sum of forty-six thousand five hundred and thirty-eight dollars and sixty cents. He, Beall, as he said

in his report of January 10, 1867, agrees to receive of the said Charles H. Blake and W. V. B. Wardwell, in full discharge of the capital and profits of the said deceased, the aforesaid sum.   The said Blake and Wardwell have agreed to pay the said sum as soon as they can arrange their affairs to do so, and within a reasonable time; that Beall continued to act as executor and administrator for at least two years after making said report, and retired from the administration, reporting the sum of forty-one thousand four hundred and twenty dollars and sixty-five cents, "due from Wardwell and Blake."   S. B. Elkins, who succeeded Beall as administrator, testified in part: "When Beall turned over the estate to me he delivered me no indebtedness against Blake and Wardwell.   I found only the inventory and reports.   Immediately after my appointment as administrator, I made a demand of Blake and Wardwell; they said they had no personal property.   I had frequent conversations with Beall about that part of the inventory that relates to the sale to Blake and Wardwell, and stated to him that I thought he did not sufficiently secure the estate; he said he thought at the time they would pay, but they had deceived him.   He still hoped they would pay, he seemed to regret their action and to be astonished at it.   These conversations with Beall continued up to February, 1870. I stated to Beall that Blake and Wardwell wanted to charge for depreciation of stock and bad debts; he said that could not be admitted; that they owed the sum stated in the inventory less the payment.   I told Beall that I had heard that Blake had sold out to Wardwell and left the territory; he said his action was strange and unexpected, and without his knowledge.   He said in different conversations that they had paid him on this indebtedness once five thousand dollars, the sum stated in the return, and that was all they had paid him."   Cross-examined: "The five thousand dollars has been applied to the payment of the debts of the estate; some five thousand dollars credited in returns.   I did not bring any suit against Blake and Wardwell; had no contract with them.   I have been attorney for Mr. Griffin; have no suit against them for this claim."   The witness was asked by

defendant's counsel if Beall had ever told him that he had sold Hinckley's interest to Blake and Wardwell. He answered: "I don't recollect that he ever told me so; I inferred so from Beall's conversation, who treated it as a sale."

We think the evidence in effect shows that Beall did sell the interest of Hinckley, deceased, in the firm of which he was a member, to the surviving parties. But, call the transaction an "arrangement," as Beall avers in his report before referred to, or a taking of the deceased's interest at a valuation by the surviving partners with the assent of his personal representative, the estate was damaged or wasted to the amount which Beall said was unpaid at the time of his resignation of the administration, and he and the sureties on his bond are liable for that amount, with interest, as damages resulting from his mismanagement of the estate. As a foundation for this suit, it was not necessary for the administrator *de bonis non* to try any experiments in collecting the amount from the surviving partners by suit or otherwise. Had Beall not made the "arrangement" with the surviving partners, the aspect of the matter would have been different; but as he made a transfer of those interests, he and his sureties must abide the legal consequences of his acts.

In the transcript of this cause appears an affidavit for a continuance made by Beall at the February term, 1870, of the court below, in order to produce a witness to testify what would have amounted to a falsification of his own solemn statements in his report hereinbefore quoted; and also an affidavit made, for the same purpose, by another of the plaintiffs in error, at the next subsequent term of said court. It further appears that, at the trial in the court below, the plaintiffs in error sought to introduce evidence as to "how long it usually takes in this country for surviving partners to wind up and settle a large commercial business," and also to show the difference "of the price of a stock of goods in this country between January, 1867, and January, 1869." As such evidence was irrelevant to the issue, the court below rightly ruled it out.

The judgment of the court below is affirmed.