### DAVID M. COCHRAN *vs.* L. M. STEWART & another.

#### April 13, 1875.

Sale of Personal Property induced by Fraud of Purchaser—Vendor's right of Rescission.—Where an owner of personal property delivers it under a contract of sale, which he is induced to make by the fraudulent acts and representations of his vendee, the contract is voidable and not void; but such owner must avoid the contract before his fraudulent vendee has sold the property to an innocent purchaser for value.

**Same—Bona Fide Purchaser from Fraudulent Vendee.**—A *bona fide* purchaser from the fraudulent vendee, before the defrauded vendor has avoided his contract of sale, will get a good title to the property, even though the fraudulent acts and representations of the first vendee amount to a statutory felony.

**Same—Same Rule applied to Assignment of Chose in Action.**—The same rule applies to assignments of choses in action, where the owner has executed to the fraudulent vendee a written assignment, and delivered with it, to the fraudulent assignee, the evidences of the debt or chose in action.

**Purchaser of Personal Property—What Enquiry he must make as to Vendor's Title.**—The law imposes upon one purchasing personal property that degree of caution and diligence in ascertaining the title of his vendor or assignor, which ordinarily prudent business men usually exercise in like circumstances; and it charges him with constructive notice of such facts only as, by the use of such caution and diligence, would probably have been discovered.

**Same—When the Title of the Vendor of Note and Mortgage is by Written Assignment, Expressed to be for Value.**—The plaintiff having executed written assignments of two promissory notes and of a mortgage given to secure them, which assignments stated that they were for value received, and delivered the notes with the assignments, a purchaser from the assignee was not called upon to enquire of plaintiff as to the facts attending the assignment.

Appeal by defendants from an order of the district court for Hennepin county, *Vanderburgh*, J., presiding, refusing a new trial.

*Cornell & Bradley* and *L. M. Stewart*, for appellants.

*Lochren, McNair & Gilfillan*, for respondent.

GILFILLAN, C. J.[1]  This was ejectment to recover real estate in the city of Minneapolis.  Both parties claim under a mortgage executed June 6, 1857, by William Clendenin to Harvey Vinal, to secure two notes, one for $216, due in six months, and one for $1,416, due in one year.  On August 31, 1858, Vinal assigned the notes to this plaintiff, and executed and delivered to him an assignment of the mortgage, with a blank space for the name of the assignee.  On September 10, 1860, this plaintiff commenced, in the district court in Hennepin county, a suit against William Clendenin, Ivory F. Woodman, Reuben Fenderson, Simon P. Snyder and William K. McFarlane, asking for a foreclos-

[1] Cornell, J., having been of counsel, did not sit in this case.

ure of the mortgage and a sale of the property, and at the same time caused the proper notice of *lis pendens* to be recorded. A decree for foreclosure and sale was entered May 11, 1863, under which the plaintiff bought the property.

It appears that these notes were assigned to plaintiff to secure a debt due him from Snyder and McFarlane. In May, 1859, they wrote to plaintiff, offering to pay him $1,600 of their indebtedness to him, if he would re-assign to them the notes and mortgage; and the plaintiff thereupon wrote to J. C. Williams at Minneapolis, authorizing him to arrange the matter for him, and sent him the assignment of the mortgage, the blank space for the name of the assignee not having been filled, and the notes, with blank spaces for the name of the assignee indorsed thereon. These Williams delivered to Snyder and McFarlane, upon receiving from them a draft for $1,600 in favor of Woodman and indorsed by him. Williams was induced to deliver the notes and assignments, and accept the draft, which proved to be fictitious and utterly worthless, by the false and fraudulent representations of Woodman and Snyder and McFarlane. They then inserted in the assignment of the mortgage the name of I. F. Woodman as assignee, and in the assignments of plaintiff, indorsed on the notes, the name of William Fenderson as assignee, and Woodman then executed an assignment of the mortgage to Fenderson. The latter appears to have had no actual interest in the matter, but to have been used by Woodman and Snyder and McFarlane as an instrument merely to hold the title.

On June, 29, 1859, Woodman executed his promissory note to Jesse L. Wetmore for $500, and at the same time, to secure it, procured Fenderson to execute to Wetmore an assignment of the mortgage and the two Clendenin notes. The assignments of the mortgage were recorded March 27, 1863. The consideration for the Woodman note, and of the assignments to Wetmore as security, was the transfer, by the latter to the former, of the note, for about $500, of one Allen, secured by mortgage. Wetmore, or rather the

agent who transacted the business for him, had no notice or suspicion of the manner in which Woodman and Snyder and McFarlane had obtained the notes, and assignments of the notes and of the mortgage, from plaintiff's agent Williams. On June 4, 1863, Wetmore, under the power of sale contained in the mortgage, foreclosed, and the property was, at the foreclosure sale, bought by William S. Chapman, who conveyed to the defendant Stewart.

It being found by the court below, the cause having been tried without a jury, that the assignments of the notes from plaintiff were obtained by the fraud of Woodman and Snyder and McFarlane, and that Fenderson had no actual interest in the transaction, but was used only as a cover by the others, neither of those parties acquired any title to the notes which could not be devested by plaintiff's repudiation of the contracts of assignment. So far as they were concerned, he repudiated such contracts by bringing the foreclosure suit to which they were made parties. Wetmore was not made a party to the suit, and whatever title he acquired was not affected by the decree. If he was the owner of the notes and mortgage when he made his fore closure, the purchaser at his foreclosure became the owner of the real estate, notwithstanding the proceedings in the foreclosure suit.

As the notes were past due when transferred to Wetmore, they were not entitled to the protection accorded to negotiable paper indorsed before due. The assignments must be governed by the rules applicable to other personal property. Where the owner of personal property parts with it, under a contract of sale which he has been induced by fraud to make, the contract of sale, though not absolutely void, is voidable at the election of the vendor. This election must be made before the fraudulent vendee sells to a *bona fide* purchaser. The principle upon which the *bona fide* purchaser is protected, is that when one of two innocent persons must suffer through the fraudulent act of a third person, he who has voluntarily placed such third person in

position to commit the fraud must be the sufferer. See *Parker* v. *Patrick*, 5 Term Rep. 175 ; *Clough* v. *London & N. W. R. Co.*, Law Rep. 7 Exch. 26 ; *Pease* v. *Gloahec*, Law Rep. 1 P. C . 219 ; *White* v. *Garden*, 10 C. B. 918 ; *Masson* v. *Bovet*, 1 Denio, 69 ; *Mowrey* v. *Walsh*, 8 Cowen, 238 ; *Fassett* v. *Smith*, 23 N. Y. 252 ; *Rowley* v. *Bigelow*, 12 Pick. 306.

Some of the text-books and cases state the proposition that this protection to the *bona fide* purchaser does not extend to a case where the act of the party selling to the innocent purchaser, in obtaining the property, amounts to a felony. In *Rowley* v. *Bigelow*, 12 Pick. 306, where there had been a sale induced by fraud, the court say : " The difference between the case of property thus obtained, and property obtained by felony, is obvious. In the latter case, no right, either of property or possession, is acquired, and the felon can convey none." The English cases use similar language. But neither in England nor Massachusetts could there be any felonious taking where the owner intended to part with the possession and title.

The same thing is expressed in *Mowrey* v. *Walsh*, 8 Cowen, 238. In *Andrew* v. *Dieterich*, 14 Wend. 31, the court held that, since the case in 8 Cowen, the statute had made the obtaining of property by false pretences felony, and that, therefore, a *bona fide* purchaser got no title where the property was obtained by his vendor by false pretences. No allusion is made to the reason for protecting a *bona fide* purchaser from a fraudulent vendee. This ruling was followed, without comment, in *Robinson* v. *Dauchy*, 3 Barb. 20. It was overruled in *Fassett* v. *Smith*, 23 N. Y. 252, but only on the ground that the statute did not make the acts a felony. In *Peabody* v. *Fenton*, 3 Barb. Ch. 451, 463, the chancellor doubted the decision in 14 Wendell, and states what we think the correct principle for the distinction between the case of fraudulent purchase and felonious taking. He says, " I apprehend that the principle upon which the decisions in *Mowrey* v. *Walsh*, 8 Cow. 238, and

*Parker* v. *Patrick*, 5 Term Rep. 175, were sustainable, was not the mere fact that the offence which the first vendee of the property had perpetrated in obtaining it was not technically a felony, but that the possession of the property, and the apparent ownership thereof, by such vendee, was the voluntary act of the original vendor, and that the latter had not lost the possession by theft or robbery."

As the basis of protection to the *bona fide* purchaser is the voluntary act of the original vendor, we do not think the rights, as between them, should be changed, merely by the statute changing the designation of, and punishment for, the act of the fraudulent vendee. The true rule, as we think, is that in case of the sale and delivery by the owner of personal property, although he may have been induced to make such sale and delivery by fraudulent acts and representations of the vendee, amounting to a felony by statute, the vendee may convey a good title to a *bona fide* purchaser.

It is not necessary to decide here whether, as a general rule, the assignee of a chose in action takes it subject to all equities, as well of third persons as of the debtor or obligor. But we will go so far as to hold that if an owner of a chose in action, intending to pass the absolute title, executes an absolute assignment, and delivers with it the evidences of the chose in action, his assignee may transfer to a purchaser for a valuable consideration, and without notice, just the title which he appears to have by the assignment and possession of the evidences of the debt. *McNeil* v. *Tenth Nat. Bank*, 46 N. Y. 327. In this regard, we see no difference between transfers of choses in action, and of other personal property. If it be, as applied to sales of tangible personal property, a sound principle, that of two persons, one of whom must suffer by the fraud of a third, he who has put it in the power of such third person to commit the fraud must be the sufferer, it is equally so as to transfers of choses in action. The equity of the innocent purchaser, though subsequent in time, is superior in degree to that of the defrauded assignor.

If, then, Wetmore was a *bona fide* purchaser of the notes and mortgage, the true title to the real estate passed under his foreclosure.

To be a *bona fide* purchaser, he must have taken the assignment for a valuable consideration, and without notice of the infirmity in his assignor's title. The consideration which Wetmore gave for the Woodman note, and the assignment of the Clendenin notes and mortgage, was a note which he held against one Allen. There was no attempt to impeach this note, or the solvency of the maker, and it is presumed to have been worth all that it called for. This constituted a valuable consideration. It appears that Wetmore's agent, who transacted the business, had no actual notice or suspicion of the fraud practised upon the plaintiff. The law imposes upon a man purchasing personal property, that degree of caution and diligence in ascertaining the title of his vendor, which ordinarily prudent business men usually employ in like circumstances, and it charges the purchaser with constructive notice of such facts only, as, with the use of such caution and diligence, would probably have been discovered. We do not think that prudence required of the agent to enquire of plaintiff as to the facts attending his assignment of the notes. The agent had presented to him the notes themselves, each with an assignment signed by plaintiff, and acknowledging value received, indorsed on it. The mortgage itself was never produced, nor seen by the agent, and he made no examination, in the register's office, of the title. A prudent man would probably have insisted on having the mortgage delivered to him, and have examined the records. But it is clear that he could have learned nothing from these as to the consideration between plaintiff and his assignee, nor as to any representations made by the latter to the former. The fact that the notes assigned were for three times the amount of the debt which they were assigned to secure, is not a suspicious circumstance.

On the whole, we conclude, on the case as it is presented to us, that Wetmore was a *bona fide* purchaser, and entitled

to be protected as such. From this it follows that, so far as now appears, he was the owner of the mortgage, and that his was a valid foreclosure. The order denying a new trial must be reversed, and a new trial ordered.