DAVID M. COCHRAN *vs.* LEVI M. STEWART *et al.*

Argued May 25, 1894.   Affirmed June 15, 1894.

No. 8760.

**Evidence considered.**

  Evidence *held* to justify the findings.

**Vendor of a chose in action estopped by his bill of sale.**

  Where a thing is sold for cash, but a check is accepted for the purchase money, and the property is delivered on the implied condition that the check will be paid on presentation, but the vendor gives to the vendee an

absolute bill of sale or assignment of the property, he will be estopped from asserting that the delivery was conditional, as against a subvendee in good faith, for value, who purchased in reliance on the vendee's muniments of title.

(Seal) is a sufficient device for a seal.

The word "Seal," affixed to an instrument, is a sufficient device, by way of seal, to entitle an instrument to record.

Appeal by plaintiff from an order of the District Court of Hennepin County, *Charles M. Pond*, J., made December 26, 1893, denying his motion for a new trial.

William Clendenin was on November 1, 1856, the owner of the southeasterly part of Block 82 in Minneapolis fronting southeast 339 feet on Hennepin avenue between Fourth and Fifth streets. He and wife on that day gave a power of attorney to Gordon Jackins authorizing him to sell and convey any and all his real estate. Under this power Jackins conveyed this real estate on June 27, 1859, to Reuben Fenderson. He and wife on November 26, 1862, conveyed to Levi M. Stewart, one of the defendants in this action. But Clendenin had mortgaged the property on June 6, 1857, to Harvey Vinal of Springfield, Ohio, to secure the payment of two notes, one for $216 due in six months and the other for $1,416 due in one year. On August 31, 1858, Vinal sold the notes to Simon P. Snyder and William K. McFarlane, doing business at Minneapolis under the firm name of Snyder & McFarlane. At their request Vinal made a transfer on the back of each note and made a separate assignment of the mortgage. The name of the purchaser was left blank in all three of these instruments.

Snyder & McFarlane were indebted to David M. Cochran of Springfield, Ohio, $2,128.33, for which sum he held their note dated that day. For his security they inserted his name in the assignment on the back of each note and also delivered to him the assignment of the mortgage without filling in the name of an assignee. On May 11, 1859, Snyder & McFarlane wrote to Cochran that if he would reassign the notes and mortgage they would pay him $1,600 on their note to him. He thereupon wrote on each of the Clendenin notes an assignment thereof by him, but left a blank for the assignee's name. He then sent the notes with the assignment of the mortgage still in blank to his agent, J. C. Williams, at Minneapolis, to

be delivered to Snyder & McFarlane upon payment by them of $1,600 which he was to indorse on their note. They paid the $1,600 by check of Joseph Ogby & Co. on a bank in Philadelphia, Pa. The check proved to be worthless. They received from Williams the two notes and inserted in the assignments thereon the name of Reuben Fenderson as assignee. They also received the assignment of the mortgage and inserted therein the name of Ivory F. Woodman as assignee. He assigned the mortgage to Fenderson, and Fenderson on June 29, 1859, borrowed $500 of Jesse L. Wetmore and as security assigned to him the two notes and mortgage. He took them in good faith without notice of any infirmity in Fenderson's title. Wetmore did not record his assignment until March 27, 1863. He foreclosed the mortgage June 4, 1863, under a power therein and William S. Chapman of San Francisco, Cal., became the purchaser at the foreclosure sale. No redemption was made and he on August 29, 1865, conveyed to defendant, Levi M. Stewart.

David M. Cochran, finding the check for $1,600 to be worthless, repudiated his transfer of the Clendenin notes and mortgage and commenced an action September 10, 1860, against Simon P. Snider, William K. McFarlane, Ivory F. Woodman, Reuben Fenderson and William Clendenin to set aside his transfer and to foreclose the mortgage. Jesse L. Wetmore was not made a party to the action. Such proceedings were had that on May 11, 1863, a decree was entered that Cochran was as against those defendants still the owner of the Clendenin notes and mortgage and directing a sale of the real estate to pay the debt. The sale was made by the sheriff July 23, 1863, to David M. Cochran for $2,350. This sale was confirmed, no redemption was made and on April 5, 1867, he commenced the present action of ejectment against Levi M. Stewart and Warner P. Curtis, his tenant, to recover possession of the property. A jury was waived, and on February 29, 1870, the issues were tried before *C. E. Vanderberg*, then a judge of the District Court. He, on March 30, 1872, filed his findings and decision for plaintiff. The defendants moved for a new trial, but were denied. On appeal that order was reversed. *Cochran* v. *Stewart*, 21 Minn. 435.

David M. Cochran died intestate at Springfield, Ohio, unmarried and without issue. His father, Robert Cochran, inherited his property. The father died testate and his will was admitted to probate

in Hennepin County, June 6, 1892, and this property was assigned to his son, A. P. Linn Cochran, and he was substituted as plaintiff in the action. A second trial was had December 8, 1892, before *Chas. M. Pond*, Judge, without a jury. He made findings and ordered judgment for defendants. In a note attached to the findings the Judge said:

The question is, who was the real owner and entitled to the possession of the Clendenin notes and mortgage at the time of their foreclosure by Jesse L. Wetmore. Was he then entitled to them as collateral security for the payment of the Woodman note for $500 or was David M. Cochran then entitled to them as collateral security for the payment of the Snyder & McFarlane note for $2,128.33? This question was directly passed upon by the Supreme Court upon evidence not differing materially from that now before this court, and the court there held that Wetmore was the lawful owner of the notes and mortgage for value and in good faith, and had the right of foreclosure. If, however, this question so determined be not in this trial *res judicata* as between the parties but is still open for further consideration, the findings of the court herein if justified by the evidence must close the contention in defendant's favor. It is then under my view of the law wholly immaterial in this case whether the Wetmore foreclosure proceedings were regular and authorized or irregular and void. That would be no matter of any concern to the plaintiff. If Wetmore was then the lawful holder of these securities and entitled to foreclose the mortgage the defendant Stewart is certainly a mortgagee in possession, if no more, and as against the plaintiff in this action, he is entitled to the possession of the premises. The plaintiff must recover, if at all, upon the strength and force of his own title to the premises, and not upon any infirmity in that of the defendant Stewart.

The plaintiff moved for a new trial, but was refused, December 26, 1893. From this order he appeals.

*Gilfillan, Belden & Willard*, for appellant.

The material findings of the court relating to the transfer and delivery of the Clendenin securities by Williams acting for Cochran, to Snyder & McFarlane, or to Snyder and Woodman, were not warranted by the evidence.

To sustain these findings there must have been evidence reasonably tending to show that payment was received or waived by Williams. There is no pretence that it was received. There can be none that it was waived unless there was something in the transaction that excepts it from the general rule that a check is not *prima facie* payment. *Fishback* v. *Van Dusen & Co.*, 33 Minn. 111; *National Bank of Commerce* v. *Chicago, B. & N. R. Co.*, 44 Minn. 224; *Globe Milling Co.* v. *Minneapolis Elevator Co.*, 44 Minn. 153.

The fact that the check was that of a third person cuts no figure. This money was to be applied upon a pre-existing debt and in such cases the rule is universal that the acceptance of the obligation of a third person is not *prima facie* payment and raises no presumption different in nature or degree from the acceptance of that of the vendee. Benjamin Sales, § 1083, and cases cited in Note 19; *Combination S. & I. Co.* v. *St. Paul City Ry. Co.*, 47 Minn. 207; *Leven* v. *Smith*, 1 Denio, 571; *Smith* v. *Dennie*, 6 Pick. 262.

The necessity for the commencement of the exercise of active diligence by the seller in reclaiming his property when the evidence of title and possession have been delivered to the buyer, depends upon the circumstances of the case, the distance of the parties from each other, the character of the property sold, and various other things and especially dates from the time the buyer first manifests a disposition or purpose to avoid his obligation to perform the condition of the contract of sale. There are other considerations of greater importance than the mere lapse of time in determining the question of negligence in these cases. The character of the property, whether perishable or immediately consumable, or the contrary, the known intent of the buyer in respect to the matter of the use to be made of the property, whether to be retained or immediately resold, as in the case of merchants buying merchandise and graindealers buying grain, and the like. *Globe Milling Co.* v. *Minneapolis Elevator Co.*, 44 Minn. 153; *Dean* v. *Yates*, 22 Ohio St. 388; *Coggill* v. *Railway Co.*, 3 Gray, 545; *Deshon* v. *Bigelow*, 8 Gray, 159; *Armour* v. *Pecker*, 123 Mass. 143; *Hirschorn* v. *Canney*, 98 Mass. 149; *National Bank of Commerce* v. *Chicago, B. & N. R. Co.*, 44 Minn. 231; *Zuchtmann* v. *Roberts*, 109 Mass. 53.

The finding and conclusion that Cochran waived his rights by

omission to diligently assert them after the delivery of the securities are not warranted.

This evidence shows that Cochran did everything required. He was not in fault for want of rescission, that is, in not returning the check, for two reasons:

First. Because there was nothing to rescind. The condition had not been performed and so the absolute title still remained in him. *Marston* v. *Baldwin*, 17 Mass. 605; *Brown* v. *Haynes*, 52 Me. 581; *Robbins* v. *Phillips*, 68 Mo. 100; *Coggill* v. *Hartford & N. H. R. Co.*, 3 Gray, 545.

Second. He was not bound to return this check because it was of no value to Snyder & McFarlane, and because no prejudice could result to them from withholding it. They did not endorse or become responsible upon it in any way, and if they had it would probably not alter the condition in this case. It would have only been a promise to pay a debt which they were already obligated to pay. *Frost* v. *Lowry*, 15 Ohio, 200; *Sheldon Axle Co.* v. *Scofield*, 85 Mich. 177; *Compton* v. *Parsons*, 76 Mo. 455; *Holmes* v. *Briggs*, 131 Pa. St. 233.

There is no ground for estoppel or waiver because Wetmore had not been misled by Cochran or through his laches. A *bona fide* purchaser in a conditional sale has no equities superior to those of the owner. *Coggill* v. *Hartford & N. H. R. Co.*, 3 Gray, 545.

But conceding that Cochran under ordinary circumstances would have owed Wetmore some equitable duty in respect to the matter of notice of his claim there is no reason shown for applying the rule in this case, because he had no knowledge or ground for suspicion that the securities had been transferred to Wetmore. The transfer was not recorded until three years and nine months after it was made and not until Cochran's action against Snyder and others to foreclose the mortgage had nearly proceeded to judgment. This seems evident, considering that Wetmore was a resident of California and entirely unknown to Cochran and that he had no known agent in this state, and that the assignments were deliberately kept from the record, and that Cochran had no hint or suggestion that any such transfer had been made.

On the former appeal this court considered only the facts found by the court below and determined upon those facts that the plain-

tiff was not entitled to recover, and that so far as then appeared the defendant must prevail. Having so determined, it ordered the case returned for a new trial generally imposing no limitations. This decision and order left the parties at liberty to retry the question of title to the property subject to the rules of law then determined. *Jordan* v. *Humphrey,* 32 Minn. 522; *Ehrichs* v. *De Mill,* 75 N. Y. 370; *Hughes* v. *Detroit, G. H. & M. Ry. Co.,* 78 Mich. 399.

The defendant cannot stand upon the claim that he is a mortgagee in possession by establishing title to the notes alone, because he has not pleaded such a claim and his evidence was objected to for any such purpose. *Hersey* v. *Lambert,* 50 Minn. 373. Under the circumstances in this case no prejudice should result to the plaintiff from delaying the prosecution. It has always been in the power of the defendant to bring this litigation to a final issue. *Auerbach* v. *Geiseke,* 40 Minn. 258.

*Young & Lightner,* for respondents.

The former decision of this court is conclusive in this second appeal upon the same state of facts presented on the former appeal. The former decision is the law of the case. *Matthews* v. *Sands,* 29 Ala. 136; *Montgomery* v. *Gilmer,* 33 Ala. 116; *Polack* v. *McGrath,* 38 Cal. 666; *Russell* v. *Harris,* 44 Cal. 489; *New Haven & N. Co.* v. *State,* 44 Conn. 376; *Kingsbury* v. *Buckner,* 70 Ill. 514; *Loomis* v. *Cowen,* 106 Ill. 660; *Gerber* v. *Friday,* 87 Ind. 366; *Lillie* v. *Trentman,* 130 Ind. 16; *Smith* v. *Brannin,* 79 Ky. 114; *Mynning* v. *Detroit L. & N. R. Co.,* 67 Mich. 677; *Damon* v. *De Bar,* 94 Mich. 594; *Metropolitan Bank* v. *Taylor,* 62 Mo. 338; *Adair County* v. *Ownby,* 75 Mo. 282; *Joslin* v. *Cowee,* 56 N. Y. 626; *Yale* v. *Dederer,* 68 N. Y. 329; *Brandon* v. *Fritz,* 94 Pa. St. 88; *Du Pont* v. *Davis,* 35 Wis. 631; *Benjamin* v. *Covert,* 55 Wis. 157; *Supervisors* v. *Kennicott,* 94 U. S. 498; *Clark* v. *Keith,* 106 U. S. 464; *Wilson* v. *Wilson,* 5 H. L. Cas. 40.

The decision is not merely conclusive upon the questions decided or argued by counsel. It is equally so upon all matters presented by the former record and involved in the matters directly decided. And it is enough that the questions sought to be raised on the second trial or appeal were presented by the record on the

former appeal, whether counsel raised them or not. They should have done so. The presumption is that every question presented by the record and involved in the decision of the former appeal was considered, whether raised by counsel or not. *Nichols* v. *Bridgeport,* 27 Conn. 459; *Ogden* v. *Larrabee,* 70 Ill. 510; *Smith* v. *Brannin,* 79 Ky. 114; *Chouteau* v. *Gibson,* 76 Mo. 38; *School Trustees* v. *Stocker,* 42 N. J. Law 115; *Bangs* v. *Strong,* 4 N. Y. 315; *Joslin* v. *Cowee,* 56 N. Y. 626.

The rule that the decision on a former appeal is the law of the case and conclusive on a second appeal in the same action has been several times recognized and applied by this court. *Ayer* v. *Stewart,* 16 Minn. 89; *Lough* v. *Bragg,* 19 Minn. 357; *Schleuder* v. *Corey,* 30 Minn. 501; *Lindley* v. *Groff,* 42 Minn. 346; *Stapp* v. *Steamboat Clyde,* 44 Minn. 510; *Tilleny* v. *Wolverton,* 54 Minn. 75.

And where a cause has been tried, appealed and reversed and a second trial had and a second appeal taken, the appellate court on the second appeal will take judicial notice of the record made and the case thereby presented on the former appeal, and also of the briefs and arguments of counsel. *Miller* v. *Jones,* 29 Ala. 174; *McKinlay* v. *Tuttle,* 42 Cal. 570; *Poole* v. *Seney,* 70 Ia. 275; *Hubbs* v. *Kaufman,* 40 La. Ann. 320; *Blesch* v. *Chicago & N. W. Ry. Co.,* 48 Wis. 168; *Corning* v. *Troy Iron & N. Co.,* 15 How. 451.

The record of the Woodman assignment to Fenderson showed signature and seal thus: "Ivory F. Woodman. (Seal)" The word "seal" was affixed by Woodman by way of seal. *Res ipsa loquitur. Brown* v. *Jordhal,* 32 Minn. 135; *Hudson* v. *Poindexter,* 42 Miss. 304; *Lewis* v. *Overby,* 28 Gratt. 627; *Hacker's Appeal,* 121 Pa. St. 192.

The action is ejectment on the legal title. The complaint alleges simply a legal title, sets out no facts that would constitute an equitable title or ground for equitable relief. On such a complaint the plaintiff cannot show an equitable title or any equities entitling him to possession. *Duford* v. *Lewis,* 43 Minn. 26; *Merrill* v. *Dearing,* 47 Minn. 137; *Stuart* v. *Lowry,* 49 Minn. 91; *Sutton* v. *Aiken,* 57 Ga. 416.

Wetmore acquired a complete title by estoppel. This is one of the grounds of the decision on the former appeal in this case. 21

Minn. 435. Title by estoppel *in pais* is a legal title. For all purposes of attack and defense, in ejectment or any other action, it is equivalent to a deed from the person estopped. *Dickerson* v. *Colgrove,* 100 U. S. 578; *George* v. *Tate,* 102 U. S. 564; *Lowell* v. *Daniels,* 2 Gray 161; *Barnard* v. *German-Am. Seminary,* 49 Mich. 444; *Trustees of Brookhaven* v. *Smith,* 118 N. Y. 634; *Beaupland* v. *McKeen,* 28 Pa. St. 124.

Authority to fill blanks in sealed instruments may be given by parol. The grantor's signature and the certificate of acknowledgement were a continuing representation that the instrument was complete when delivered. This representation so made and the purchasers parting with value in reliance on it and in ignorance of its falsity make a complete estoppel. *State* v. *Young,* 23 Minn. 551; *Pence* v. *Arbuckle,* 22 Minn. 417; *Dobbin* v. *Cordiner,* 41 Minn. 165; *Phelps* v. *Sullivan,* 140 Mass. 36.

So far as any condition attached to Williams' authority is concerned, the case is within the rule of *McCord* v. *Western Union Tel. Co.,* 39 Minn. 181, as restated in *National Bank of Commerce* v. *Chicago, B. & N. R. Co.,* 44 Minn. 224.

The owner who intrusts another with or leaves such other in possession of the indicia of absolute ownership or right of disposition of a chose in action, is estopped to assert title against a purchaser to whom such person in violation of instructions or even in fraud of such owner has transferred the title for value, the purchaser having bought in reliance on such *indicia* of title and right of disposition. *Merchant* v. *Woods,* 27 Minn. 396; *Bausman* v. *Faue,* 45 Minn. 412; *Queen* v. *Shropshire Union Co.,* L. R. 8 Q. B. 420; *Cowdrey* v. *Vanderburgh,* 101 U. S. 572; *Arnold* v. *Johnson,* 66 Cal. 402; *Winton* v. *Hart,* 39 Conn. 16; *Western Union R. Co.* v. *Wagner,* 65 Ill. 197; *Williams* v. *Fletcher,* 129 Ill. 356; *Spooner* v. *Cummings,* 151 Mass. 313; *Grocers' Bank v. Neet,* 29 N. J. Eq. 449; *McNeil* v. *Tenth Nat. Bank,* 46 N. Y. 325; *Wood* v. *Smith,* 92 Pa. St. 379; *Baker* v. *Taylor,* 54 Minn. 71.

MITCHELL, J. This case reappears in this court after an absence of nearly 20 years. 21 Minn. 435.

The facts are sufficiently stated in the opinion on the former

appeal. The vital question now, as then, is whether, as between Wetmore and Cochran, the former was the owner of the Clendenin mortgage at the time of its foreclosure, in 1863.

The evidence as to Wetmore's title to the mortgage, and as to his being a purchaser in good faith, for value, presented by the present record is, in all material respects, the same as on the former appeal. It is not quite apparent, therefore, why every question raised on this appeal is not *res judicata* by the former decision, as "the law of the case." But it is not necessary to consider this question. The gist of plaintiff's contention is that the evidence did not justify the two pivotal findings of the trial court, to wit: *First*, that Williams had authority from Cochran to transfer and deliver the Clendenin notes and mortgage to Snyder & Woodman for Ogby & Co.'s check for $1,600; *Second*, that such transfer and delivery were unconditional. The objection made to the first finding is that the evidence shows that Williams' only authority was to deliver on payment of cash; and the objection to the second is that the evidence shows that the delivery was subject to the implied condition that Ogby & Co.'s check would be paid on presentation. But in our opinion both findings were amply justified by the contents of Cochran's letter of May 17th to Williams, and the fact that when Cochran received the check he did not return it, but himself presented it for payment, and, as late as September, was trying to collect it, and in fact never did return it, and the further fact that when, as late as 1860, he brought an action to reclaim and foreclose the Clendenin mortgage, he did not claim that Williams had exceeded his authority, or that the delivery of the notes and mortgage to Snyder & Woodman was conditional, but predicated. his right of recovery exclusively upon the ground that the act of Williams was procured to be done by the fraudulent representations of Snyder & Woodman that the check was good, and prayed for relief against the assignment of the mortgage "so fraudulently procured."

But, even if, as between the original parties, the evidence would not have justified the findings, it certainly does as between plaintiff and Wetmore, as an innocent purchaser for value, on the ground of equitable estoppel. Cochran put these instruments, complete in every respect, except the name of the assignee, into the hands of

Williams, to be delivered to Snyder. They both knew that by delivering them they were putting it in his power to fill the blank, and then offer the instruments, thus completed, for sale to one to whom the instrument would give no notice whatever that they had ever been in the hands of Williams, or any other agent of Cochran, or of any conditions attached to their delivery, or of the fact that the assignment of the mortgage was originally in blank. Cochran thus clothed Woodman, whose name was inserted in the blank, with apparent perfect and absolute title to the notes and mortgage; and by so doing he is estopped from asserting the present defenses against one who purchased in good faith, for value, in reliance on these muniments of title. Wetmore was therefore entitled to be protected as a *bona fide* purchaser. This was decided on the former appeal, although the court, in there applying the doctrine of equitable estoppel, had more particularly in mind the alleged fraudulent representations of Snyder and Woodman as to the Ogby check. But the doctrine is equally applicable to the points more particularly urged on this appeal. Where a thing is sold for cash, but a check is accepted for the purchase money, and a delivery of the thing is made on the implied condition that the check will be paid on presentation, there are cases which hold that the vendor will not be estopped, as against a subvendee, by the fact that he gave a written acknowledgment of the payment of the purchase money; but we apprehend no case can be found which so holds, where the vendor gave an absolute bill of sale or assignment of the property, and the subvendee for value purchased on the faith of these muniments of title. Such was the fact in this case.

While the case has been very exhaustively argued by counsel, and numerous assignments of error made, it seems to us that what has been said covers all there is of substance in this appeal, and is decisive of the case.

The word "Seal" affixed by Woodman to his assignment of the mortgage to Fenderson, was a sufficient "device" by way of a seal to entitle the instrument to record.

Order affirmed.

Buck, J., absent, sick, took no part.

(Opinion published 59 N. W. 543.)