FRANK L. SANDERCOCK v. G. S. EVARTS AND OTHERS.[1]

March 16, 1928.

No. 26,489.

**Testimony as to market value of land—handwriting of pen and ink notations to letter.**

1. The court committed no error in refusing to strike the testimony of a witness as to value of land, received without objection. And the court was justified in concluding that the written lines on a typewritten letter were written by the one who signed and sent the letter to defendants.

[1]Reported in 218 N. W. 464.

**Purchase of land by defendants was induced by fraud.**

2. The finding that defendants were induced by fraud and misrepresentations to enter a contract for the purchase of lands in California is amply sustained.

**Such fraud was that of payee in note in suit.**

3. That such misrepresentations were made by the payee in the note in suit, such note representing part of his commission, was also established.

**Plaintiff was not a good faith purchaser of note before maturity.**

4. The finding that plaintiff was not a good faith purchaser of the note for value and before maturity, but took it by indorsement with full knowledge of the facts and with notice of defenses thereto, is sustained by the evidence.

**No estoppel against defendants' asserting fraud of payee.**

5. A release from the contract by the vendor did not discharge the payee of the note from responsibility for the fraud and consequent damage sustained by defendants. Nor was the court compelled to find, as a conclusion of law from the testimony, that defendants had waived the fraud of the payee of the note or were estopped from asserting the damages sustained as an offset to the note.

**Damages caused defendants exceeded amount of their note.**

6. Whether the damages were established to the full amount found is not important, since in any event they exceeded the amount of the note.

Appeal and Error, 4 C. J. p. 1057 n. 85.
Bills and Notes, 8 C. J. p. 1020 n. 7; p. 1046 n. 9; p. 1052 n. 50.
Brokers, 9 C. J. p. 567 n. 65; p. 654 n. 41; p. 659 n. 61.
Trial, 38 Cyc. p. 1406 n. 58.

Plaintiff appealed from an order of the district court for Pipestone county, Nelson, J. denying his motion for a new trial. Affirmed.

*Evans & Evans,* for appellant.

*C. T. & C. B. Howard,* for respondents.

HOLT, J.

Appeal from an order denying plaintiff a new trial. The action is upon a promissory note executed by defendants, payable to the order of W. F. Sandercock, plaintiff's brother, and alleged to have been transferred by him to plaintiff for value before maturity. The defense was that plaintiff was not an innocent holder for value before maturity, that the payee of the note obtained the same as commission in the sale of 1,000 acres of land in California to defendants, which he by false and fraudulent representations induced defendants to purchase, and wherein they sustained heavy damages which they ask to have offset against the note.

The trial was to the court. Two rulings during the trial are challenged and the findings of fact are severally assailed as unsupported.

Little need be said upon the rulings. Defendants agreed to pay about $200 an acre. A witness testified the land was worth $100 per acre. Then he was asked: "Has it, at any time you have known it has the market value been any higher? A. No, sir." Plaintiff's counsel moved "to strike that out as incompetent, irrelevant and immaterial—the market value at other times." The error assigned is the refusal to strike. It is plain there was no error here. The witness was sent to farm the land shortly after it was purchased and remained on there for several years thereafter. Hence the time covered by the answer was sufficiently near the transaction to bear on the value at that time. The contract was made in February, 1920. The witness went to California in September the same year. There is no intimation in the record that any change in market value of land in California had taken place in the meantime.

The other error is assigned upon the reception of a typewritten letter dated May 11, 1921, from the payee, to which was appended, after his signature, a couple of lines with pen and ink stating: "When may I expect remittance on your note of $4,877.25? I need the money." The note was then about two months past due. The point is that there was no proof that the added lines were the payee's handwriting. The letter was signed by him. Defendant Feldman's testimony was that the writing was there when the letter came into

his hands.  It was for the trial court to determine from this testimony and a comparison of the signature with the written lines whether the latter were written by the payee.  If so, it went far to establish that plaintiff was not a purchaser of the note before maturity.  There was no error.  A comparison of the writings more than justifies the ruling.

That the payee of the note by misrepresentations and falsehood induced defendants to enter into the contract with the Natomas Company to buy for $216,767 a little over 1,000 acres of land in the Sacramento Valley in California is so well supported by the evidence that the finding to that effect cannot be disturbed.  No useful purpose will be served by stating the representations made and wherein they were false.  (In the answer and the briefs the parties have mistakenly stated that 10,000 acres were purchased.)

Defendants Evarts and Feldman, residents of this state, went to California in February, 1920, for the purpose of investing in lands. They fell in with W. F. Sandercock, a sales agent of Natomas Company, the owner of lands, in Sacramento Valley.  He made whatever misrepresentations were made and put the deal through.  And as an inducement, in addition to his misrepresentations of the quality of the land and the adequacy of its drainage system, he agreed to give defendants most of his 20 per cent commission, accepting from them two promissory notes of $4,877.25 each, one of which notes became due soon after the deal and was paid.  The other was due March 15, 1921, and is the one in suit.  So the whole cash down payment of $21,676.70 was received by the company when the contract was signed.

One of the vital findings was that plaintiff was not a good faith purchaser of the note before maturity.  Plaintiff's own testimony is somewhat uncertain as to when he acquired it.  The payee, W. F. Sandercock, also testified that he gave the note to plaintiff before due and in consideration of work previously performed.  The work was not for any compensation agreed upon beforehand.  Nor did plaintiff write defendants or attempt to collect the note until three years after due.  The written lines in the typewritten letter of May 11, 1921, from the payee to defendants, above set out, indicate that

plaintiff did not then own the note. We think the court could find "that at some time after maturity" the note was transferred by indorsement to the plaintiff, who "took said note with full knowledge of the facts thereof, and with notice of any defenses." The court having found that the Sandercocks wilfully falsified as to the transfer before maturity, could also conclude there was no transfer for value so as to bring the case within Cochran v. Stewart, 21 Minn. 435. The relation of the brothers in a business way was, on their own testimony, intimate, and the finding above quoted is justified.

After defendants had paid the company the first instalment and paid the first note to W. F. Sandercock, they realized that there had been misrepresentations in regard to the land. The record also reveals that because of the slump in values of Minnesota lands in which defendants were interested they were extremely anxious to obtain a release from their contract with the Natomas Company. To that end they requested the assistance of W. F. Sandercock. In a letter to the latter dated May 18, 1921, soliciting such aid, "to bring about some satisfactory settlement on this deal," the defendants add this sentence: "We of course in this case would expect to pay the other note which you are holding less the 5% commission which is due us." The company finally did release the defendants, but the record does not show on what terms except that defendants did not get back any of the initial payment to the company, nor the taxes and assessments paid, nor the amount of the first note paid Sandercock, nor was the release obtained on the terms defendants desired in the letter of May 18, 1921, so as to make applicable the promise therein contained to pay this note. In November of 1920, when Evarts went to California and found the land too wet to plow, W. F. Sandercock told him it was an abnormal year. Feldman was out there in February, 1921, and found conditions even worse, but was advised by Sandercock to put in the crops. Some were put in, but he came back to his associates convinced that they were "stung," and the efforts were made to get out of a bad situation which finally succeeded, except as to the note in suit.

Appellant strongly urges error in the refusal of the trial court to make a requested conclusion of law that defendants had waived

the fraud. One argument advanced is that defendants continued in possession nearly two years after certain of the representations made were known to be false. To that the answer is that defendants had not learned the full extent of the deception practiced on them either in respect to the soil or the drainage system; for when, in November, 1920, the representation that the drainage ditches were adequate appeared false, W. F. Sandercock assured defendants that it was an unusual season and later persuaded them to plant a crop, notwithstanding it could not be seasonably done because of the wet condition of the soil, upon similar pretext and by attributing the poor crop of 1920 to the tenant's poor farming. The fact of the matter was that the soil was adobe or dobie and hardpan, entirely unfit for raising wheat, barley, alfalfa or fruit, and was not silt such as his own farm not far distant, which he had shown defendants, representing the soil to be the same as the land they were induced to buy, and which farm he, in June, 1920, assured defendants produced 100 bushels of barley to the acre that year and had great yields of alfalfa.

Waiver is also predicated upon the fact that defendants were ultimately released from the contract of purchase by the Natomas Company. There is no evidence that the damages sustained were settled, or any part of the moneys paid the company or Sandercock returned. Part of the money which defendants lost because of the fraud went to W. F. Sandercock. It is true he was the agent for the company, but he was the one who made the misrepresentations and defendants could hold him as well as the company responsible and, so long as there had been no settlement of the tort by the company, defendants retained their remedy against him. The finding that W. F. Sandercock was the agent of defendants is immaterial, for irrespective of agency he perpetrated the fraud and rendered himself liable therefor. But again waiver and estoppel is based on the fact that by a letter of February 19, 1921, defendants, before its due date, requested an extension of time to pay the note and on May 18, 1921, after due, wrote: "We of course in this case would expect to pay the other note which you are holding less the 5% commission which is due us." The last mentioned letter contained

the proposition that W. F. Sandercock should procure the Natomas Company to deed them land for the instalment paid it and cancel the contract as to the balance. That was not accomplished. It is however contended that W. F. Sandercock gave the letter of February 19 to plaintiff, who on March 15, 1921, wrote defendants granting an extension for a "reasonable time." Defendants positively denied the receipt of any such letter. From the facts already alluded to going to show that as late as May 11, 1921, W. F. Sandercock held the note, the court could well conclude this pretended letter was never written until long after its pretended date. We therefore think the trial court was not compelled to find either waiver or estoppel, for no extension was granted or settlement had upon the terms proposed by defendants as a condition for their waiving the fraud as to W. F. Sandercock.

The court found that defendants had been damaged in the sum of more than $36,000 by W. F. Sandercock's fraudulent representations. This finding is attacked. There is no question that the actual loss to defendants in money paid to Sandercock and the company exceeded $25,000. That sum more than offsets the note in suit. So the amount of damage beyond the offset becomes unimportant.

Plaintiff was not entitled to have the material findings upon which the conclusion of law rests amended, nor a new trial for errors during the trial.

The order is affirmed.